BOARD OF SOCIAL WELFARE, Petitioner, v. COUNTY OF LOS ANGELES et al., Respondents.

Robert W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Petitioner.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, for Respondents.

SCHAUER, J.—Petitioner, the Board of Social Welfare of this state (hereinafter sometimes termed the welfare board), by this original mandamus proceeding seeks to compel respondents, the County of Los Angeles, its board of supervisors, and its auditor, to make certain payments of public aid which were ordered retroactively by petitioner. Three separate factual situations in which respondents have refused to make payments ordered by the welfare board are presented. For the reasons hereinafter stated we have concluded that in each case petitioner's position must be sustained and its order complied with by respondents. Although the same basic principles control the several cases their respective problems vary sufficiently to make it expedient to discuss each case individually.

## The Holmes Case

The first case is that of one Ira K. Holmes, who, on September 4, 1941, filed an application with the board of supervisors for aid as a needy aged person, pursuant to the provisions of the California Old Age Security Law (Welf. & Inst. Code, div. III). From March 1, 1942, to November 30, 1943, Holmes, in accordance with the determination of such board received aid in certain sums, never more than $40 a month. On September 28, 1943, Holmes, on the ground that he was entitled to greater aid than he had been receiving, appealed to the State Board of Social Welfare, petitioner herein, from the determinations of the board of supervisors (see Welf. & Inst. Code, § 2182). Pending such appeal the board of supervisors reconsidered Holmes' application and increased the amount allowed to him each month from $40 to $50, effective December 1, 1943. On July 28, 1944, the welfare board considered the appeal theretofore made to it by Holmes from the determinations of the board of supervisors, and directed the county to pay to Holmes the total sum of $292 as additional aid to which he had become entitled between March 1, 1942, and November 30, 1943. At the hearing on such appeal a representative of the county appeared and agreed that the prior determinations of the board of supervisors had been erroneous but denied the right of the State

Welfare Board to order that such errors be corrected retroactively.

Section 2182 of the Welfare and Institutions Code, pursuant to which Holmes appealed to the welfare board, provides that, "If any applicant or recipient is dissatisfied with the action of the board of supervisors, he shall, upon filing a petition with the State Department of Social Welfare, have the right of appeal. . . .

"The State Social Welfare Board shall consider the appeal, and shall dismiss the appeal or award aid as prescribed in this chapter. The county board of supervisors shall then pay to such aged person the sum awarded, if any, by the State Social Welfare Board, the payments, if awarded, *to commence from the date the applicant was first entitled thereto.*

"Payments of aid shall be commenced as of the first day of the month in which the application is granted, *unless otherwise directed by the State Social Welfare Board in cases in which an appeal is taken; but in no event shall the aid commence prior to the date of application.* . . .

"If the applicant or recipient feels himself aggrieved by any decision of the State Welfare Board, he may file with the superior court of the county in which he resides, a petition, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case." (Italics added.)

The sole defense advanced by respondents in support of their refusal to pay to Holmes the aid retroactively ordered by the welfare board is that the payment of such aid without a finding of "present need" by the welfare board constitutes a "gift of public money" in violation of the provisions of our state Constitution (art. IV, § 31) that the Legislature shall have no power "to make any gift or authorize the making of any gift, of any public money . . . to any individual . . .; *provided,* that nothing in this section shall prevent the Legislature granting aid pursuant to Section 22 of this article" (which section contemplates the payment of aid to, among others, "aged persons in indigent circumstances").

To sustain their position respondents rely upon the cases of *County of Los Angeles* v. *Jessup* (1938), 11 Cal.2d 273 [78 P.2d 1131]; *Goodall* v. *Brite* (1936), 11 Cal.App.2d 540 [54 P.2d 510]; and *County of Alameda* v. *Janssen* (1940), 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141]. The factual

situations presented by the first two of those cases, however, are clearly distinguishable from that now before us and the third case appears to be more persuasive toward the conclusion urged by petitioner than toward that sought by respondents. The Jessup case involved the constitutionality of certain legislation which purported to retroactively release *all* liens and mortgages lawfully held by the counties of this state as security for old age assistance paid by such counties regardless of whether the property which constituted the security was still owned by the recipient of aid or had been by him transferred to third parties subject to a county lien. It was properly held that to discharge the lien in favor of the heir or grantee of the recipient of the aid who had acquired such property subject to the lien, or to release the lien upon properties of persons who never were entitled to aid, would constitute a gift in violation of section 31. But manifestly we have no such situation before us now. In the Brite case it was held that the acceptance and treatment by a county hospital, without compensation therefor, of patients who were financially able to secure efficient hospitalization elsewhere constituted an unauthorized gift by the county of public funds to private persons. In contrast is our decision in the Janssen case, by which we held constitutional legislation which authorized the release of liens held by a county as security for old age assistance paid, only if the property was still owned by a qualified recipient of aid or, in the event it had passed to another, if the county received an amount equal to the value which might be realized upon foreclosure of the lien. The ground for such holding was that "the legislature seems clearly justified in its belief that the release of liens held against the property of indigent recipients of aid is for the general public welfare." (See pp. 282-284 of 16 Cal.2d.)

In the case now before us we are of the view that the provisions for appeal to the State Social Welfare Board and for "the payments, if awarded, to commence from the date the applicant was first entitled thereto" likewise subserve a clear public purpose by securing to those entitled to aid the full payment thereof "from the date . . . [they were] first entitled thereto" regardless of errors or delays by local authorities. It was the mandatory duty of the county to furnish aid according to the plan therefor which is laid down by the applicable provisions of the Welfare and Institutions Code. (*County of Los Angeles* v. *Frisbie* (1942), 19 Cal.2d

634, 639 [122 P.2d 526]; see, also, *County of Los Angeles* v. *Payne* (1937), 8 Cal.2d 563, 573 [66 P.2d 658]; *San Francisco* v. *Collins* (1932), 216 Cal. 187, 190 [13 P.2d 912]; *County of Sacramento* v. *Chambers* (1917), 33 Cal.App. 142, 147-149 [164 P. 613].) The obligation to pay became a debt due from the county to the applicant as of the date the latter was first entitled to receive the aid. (See *State of California* v. *Poulterer* (1860), 16 Cal. 514, 526.) ■ The bare fact that an applicant has by one means or another managed to ward off starvation pending receipt of the payments to which he was previously entitled provides no sufficient excuse for a county to refuse to make such payments. To hold otherwise would, as suggested by petitioner herein, provide a money-saving device for the counties at the expense of those of our citizenry least able to bear the burden thereof.

■ Nor does it appear that an express "finding" by the welfare board that an applicant for aged aid is in "present need" of the payments to which he had earlier become entitled, is essential to avoid the charge that the making of such payments would constitute a "gift of public money" in violation of the Constitution. On the contrary, the awarding of retroactive aid by the welfare board implies a finding that the need existed as of the period or periods during which, according to its determination, the applicant was entitled thereto, and that such need has not yet been alleviated. If, perchance, it has been upon the bounty of friends and neighbors that the applicant has subsisted in the meantime, then (in the absence of other available resources) he is still in need of, and is entitled to, retroactive payment of his relief money in order that he may repay such advances. A contrary holding would serve to unfairly penalize those whose humanity has led them to make direct advances to the support of the applicant, even though they, in common with other citizens, had contributed through the channels of taxation to the fund from which the applicant was legally entitled to relief payments.

### The Pitt Case

The next case concerns one Sarah A. Pitt, who, on August 16, 1938, filed with the board of supervisors her application for old age assistance (see Welf. & Inst. Code, div. III). Approximately six and one-half months later, viz.: on March 1, 1939, such board determined that Mrs. Pitt was entitled to assistance in the sum of $35 per month, less the sum of $27

per month which was fixed as the value of board and room then being contributed by Mrs. Pitt's daughter. On December 1, 1939, such board determined that the daughter was unable to contribute to Mrs. Pitt's support, and increased the aid payments to $35 per month. On February 2, 1942, Mrs. Pitt appealed to the welfare board, petitioner herein, asking that it direct the board of supervisors and the County of Los Angeles to pay to her as additional aid the sum of $35 per month for the period from August 16, 1938, to March 1, 1939 (the six and one-half months' period between the filing of her application for aid and the commencement of payment thereof), plus the sum of $27 per month for the period from March 1, 1939, to December 1, 1939, upon the ground that her daughter was not at any time able to contribute any sum to her support.

On September 25, 1942, the welfare board made its written findings of fact in which, in addition to a recital of certain of the facts set forth above, it is stated that "The county was unable to complete the investigation of this application within ninety days from its date, August 16, 1938, and on application to the Social Welfare Board was granted an additional ninety days according to law. The investigation was completed within the additional ninety days allowed and aid was granted beginning March 1, 1939. . . . No claim of lack of ability to contribute to her mother's support was made by the daughter prior to the filing of this appeal February 4, 1942. The claim now is to recompense the daughter for money expended during the period of her mother's care. Retroactive aid is the only question involved." From such facts the board determined that "The county exercised due diligence under the law as it existed in 1938 and 1939. . . . Appellant [Mrs. Pitt] was in receipt of full support for the period during which she was eligible and was therefore not in need. Retroactive aid denied and the appeal dismissed."

Following the above set forth determination of the welfare board, and in January, 1943, Mrs. Pitt applied to the superior court in Los Angeles county for a writ of mandate to compel the welfare board to grant the relief she had sought from such board. On February 2, 1944, the superior court, after proceedings duly had, found "That the Board of Supervisors . . . failed, neglected and refused to make the necessary investigation on petitioner's claim for old age security without any unnecessary delay and with all diligence, contrary to the law . . . and that petitioner was entitled to receive aid in

the sum of Thirty-Five ($35.00) Dollars per month from November 16, 1938, to March 1, 1939. . . . That the Board of Supervisors . . . was in error in determining that the daughter of petitioner . . . was a person able and responsible . . . to furnish any support to petitioner, and that petitioner was entitled to receive aid in the sum of Thirty-Five ($35.00) Dollars per month, instead of Eight ($8.00) Dollars per month, from March 1, 1939, to December 1, 1939. . . . That the State Department of Social Welfare was in error in its interpretation of the laws . . ., and in refusing to grant to petitioner any relief on her appeal . . .,'' and ordered the welfare board ''to determine petitioner's right to retroactive aid, in accordance with the rulings of the Court herein, and to cause such retroactive aid [in the sum of $365] to be paid to petitioner forthwith.'' Such judgment became final. On April 12, 1944, Mrs. Pitt died, and on June 30, 1944, in compliance with the judgment, the welfare board ordered the board of supervisors of Los Angeles county to ''pay to the estate of Sarah A. Pitt, her legal counsel, or both, the sum of . . . ($365) for the following period of time: November 16, 1938, until February 28, 1939, at the rate of $35 per month, and from March 1, 1939, to December 1, 1939, in the sum of $27 per month.''

In addition to the arguments advanced in the Holmes case, *supra*, respondents assert that the payment by them to ''the estate of Sarah A. Pitt, her legal counsel, or both,'' of the retroactive aid ordered by the welfare board would constitute an unlawful gift of public money. Especial reliance is placed by respondents upon the recent case of *Creighton* v. *County of Pope* (1944), 386 Ill. 468 [54 N.E.2d 543, 153 A.L.R. 803], wherein it was held by the Supreme Court of the State of Illinois that a cause of action to compel the payment of aid to a needy blind person died with the claimant. However, as pointed out by petitioner welfare board the judgment of the superior court ordering it to forthwith pay retroactive aid to Mrs. Pitt was entered prior to her death; and, moreover, a declared basis of the decision in the Creighton case is that statutes granting relief to needy persons ''are in derogation of the common law and must be construed strictly'' (see p. 475 of 386 Ill.), while by section 2003 of our Welfare and Institutions Code it is provided that our Old Age Security Law shall be liberally construed. The right to the aid (ordained by § 2001) is strictly personal and the

aid, as such, is declared to be "absolutely inalienable" (Welf. & Inst. Code, § 2006) but there is no suggestion in the statute that the proceeds of the aid when paid, whether in the form of money or other store of value, or the right to receive which has become vested and final, shall not be subject to devolution as an ordinary incident of the property right. (*Cf. Estate of Lindquist* (1944), 25 Cal.2d 697 [154 P.2d 879].) The aid to which Mrs. Pitt was entitled became a debt owing to her by the county as of the date, and in the amount in which, it should originally have been paid to her. Respondent has shown no defense to the prima facie right established by petitioner. Accordingly we are of the view that, as in the Holmes case, respondents must comply with the final order of the welfare board.

### *The Neal Case*

█ In the third case we are concerned with the rights of two minor children, Amel Arthur Neal and Jack William Neal, who from May 1, 1943, through December 30, 1943, received aid, pursuant to application therefor and granting thereof by the board of supervisors, in the sum of $30 per month (see Welf. & Inst. Code, div. II, part 2). On December 17, 1943, the mother of the children was killed in an accident; on December 29, 1943, the charities department of the County of Los Angeles learned of such fact, and aid was discontinued as of December 30, 1943, on the ground that the whereabouts of the children was unknown. However, on December 30, 1943, a half-sister of the children notified such charities department that the children were living with her and requested that aid for them be forwarded to her. A reinvestigation of the case was made by the charities department but aid was not restored until March 1, 1944. On June 15, 1944, appeal was made to the Board of Social Welfare asking that aid be awarded for the months of January and February, 1943; on July 27, 1944, the welfare board ordered that such aid, in the sum of $60 for each child, be paid by the County of Los Angeles.

Section 1551 of the Welfare and Institutions Code which provides for appeal to the State Welfare Board if aid for a needy child is denied by a county after application therefor, directs that "The State Social Welfare Board shall consider the appeal, and shall dismiss the appeal or award aid. . . . The county shall then pay for the needy child the sum, if any,

awarded by the . . . Board, the payments, if awarded, to commence at the time the . . . Board directs. The decision of the board shall be binding upon the county.''

In view of what we have said concerning the Ira K. Holmes case, *supra*, it is apparent that here, as in that case, respondents must comply with the order for payment of retroactive aid to the Neal children.

It is ordered that the peremptory writ of mandate issue commanding the respondents to make the payments of aid ordered by the State Board of Social Welfare to the several persons entitled thereto according to the views hereinabove expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.