[Civ. No. 38006. First Dist., Div. One. Feb. 1, 1977.]

ARDYTHE CANFIELD, Plaintiff and Appellant, v.
JEROLD A. PROD, as Director, etc., Defendant and Respondent.

COUNSEL

Carol R. Golubock for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Daniel Johnson, Jr., and John Fourt, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**MOLINARI, P. J.**—Ardythe Canfield appeals from the order denying her petition for a writ of mandate directing respondent, the Director of the Department of Benefit Payments (hereinafter referred to as Director or Department) to set aside his administrative decision denying her claim for attendant care grants under the Aid to the Totally Disabled (ATD) program (formerly Welf. & Inst. Code, §§ 13500-13801).[1]

The facts are not in dispute.

Canfield was an ATD recipient from June 1968 through December 1973 because of mental and physical disabilities. As such, she was the recipient of an attendant care grant to pay for an attendant to provide domestic and personal care services. She received $150 per month in 1969 and 1970, with the exception of one month when she received $171.50. In 1971, she received $300 a month. Attendant care grants were to include carfare, meals, workmen's compensation and social security deductions. For parttime attendant services the social security deductions included grants for both the employee and the employer tax; for fulltime attendant services the grant included only the employer's tax. (Cal. State Dept. of Social Welfare, Manual of Policies and Procedures, Eligibility and Assistance Standards, reg. 44-239.263.)[2] Amounts to cover social security deductions were included in an attendant care grant because the recipient of such a grant is viewed as the employer of the attendant under the Federal Insurance Contributions Act. (26 U.S.C. § 3101 et seq.)

---

[1]Hereinafter all references to code sections are to the Welfare and Institutions Code unless designated otherwise.

Sections 13500-13801 were repealed by Statutes of 1973, chapter 1216, section 55, page 2923, effective December 5, 1973.

[2]Hereinafter references to regulations are to this manual. Prior to February 1, 1974, the Department of Benefit Payments was known as the State Department of Social Welfare. (Welf. & Inst. Code, § 10550; Stats. 1973, ch. 1212, § 448, p. 2883.)

During the period of January 1969 through December 1971, Canfield was never informed by the San Mateo County Department of Public Health and Welfare (hereinafter County) nor by the Department of her status as an employer under federal law, nor of her obligation to pay the employer's tax under the law although the County had the responsibility to inform her, nor did her grants for that period include such tax. The County workers who handled Canfield's case were unaware until 1972 of Canfield's status and obligation. In 1972 the County informed Canfield of her obligation but failed to inform her of her right to request a fair hearing.

In March 1974 Canfield was notified by the United States Internal Revenue Service that a tax lien had been placed on her home for delinquent taxes and penalties assessed for her failure to pay the employer's tax for a household employee in the years 1969, 1970 and 1971. Canfield then consulted with an attorney and filed a request for administrative review of the County's failure to inform her of her obligation and to include in her attendant care grant the employer's tax.

The hearing was held on September 11, 1974. At the hearing the County recognized that Canfield was eligible for sums to cover the payment of taxes in 1969 and 1970 but since Canfield received the maximum amount possible in 1971 ($300 per month) she was not eligible for additional funds for that year.

The Director, however, denied Canfield's claim on the ground that the Department's regulations limit the adjustment of an underpayment to 12 months following discovery of the underpayment in cases where the underpayment was due to administrative error or inadvertence, or to 14 months following the month of payment where the underpayment was due to other causes.

The regulations relied upon by the Director are the following:

Regulation 44-331.1 provides that "underpayment which is not balanced against overpayment . . . is adjusted by administrative action authorizing payment of retroactive aid under the circumstances prescribed below and within the time limits specified."

Regulation 44-331.11 provides that "underpayment resulting from administrative error or inadvertence shall be adjusted by payment of aid

equal to the full amount of the underpayment which occurred during the one-year period preceding discovery of the error or inadvertence. . . ."

Regulation 44-329.124 provides in part as follows: "Underpayment due to 'administrative error or inadvertence' is an underpayment due to one or more of the following mistakes made by the county administering aid: . . . Failure to grant and/or pay aid in the correct amount when all information essential for such payment was in the county record; . . ."

The foregoing regulations find their genesis in subdivision (g) of section 11004 which provides as follows: "(g) When an underpayment or denial of aid occurs because of an administrative error or inadvertence on the part of a county, and as a result the applicant or recipient does not receive the amount to which he is entitled, the county shall pay aid equal to the full amount of the underpayment which occurred during the period of one year immediately preceding the date the error or inadvertence is discovered."

■ Canfield contends that the Director's decision was in error as a matter of law on the ground that he applied the wrong limitations period. She relies on former subdivision (f) of section 11004 which provides that a recipient could recover aid equal to the full amount of an underpayment which occurred during the period of four years immediately preceding the date the error or inadvertence was discovered. This statute was amended effective August 13, 1971 (Stats. 1971, ch. 578, § 20.3) and, by virtue of the amendment, became subdivision (g) of section 11004 providing for the one-year limitation period.

It is asserted by Canfield that wrongfully denied public assistance benefits are a debt due from the date of entitlement and that application of the one-year limitation period constituted a retrospective amendment of the limitations statute so as to deprive her of accrued rights.

There is no question that the obligation to pay aid to which an applicant is entitled is a debt due from the county as of the date the applicant was first entitled to receive aid and that the right to receive benefits vests in the recipient on the first date of his entitlement thereto. (*Tripp* v. *Swoap,* 17 Cal.3d 671, 682-683, 685 [131 Cal.Rptr. 789, 552 P.2d 749]; *Bd. of Soc. Welfare* v. *County of L. A.,* 27 Cal.2d 81, 85-86 [162 P.2d 630]; *Leach* v. *Swoap,* 35 Cal.App.3d 685, 689 [110 Cal.Rptr. 62].) Accordingly, the right to such benefits is a vested right. (See *Harlow* v. *Carleson,* 16 Cal.3d 731, 735-737 [129 Cal.Rptr. 298, 548 P.2d 698];

*Flournoy* v. *State of California,* 230 Cal.App.2d 520, 531 [41 Cal.Rptr. 190].)

■ Adverting to subdivision (g) of section 11004 and its predecessor sections, we perceive these statutes to be more in the nature of a limitation of liability rather than a statute of limitations. These statutes do not purport to limit the time within which an action for recovery of underpayment of benefits are to be made but purport to limit the amount of underpayments that may be recovered following the discovery of such underpayments. It is not disputed by Canfield that the Legislature has power to limit the amount of recovery (see *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 125-128 [216 P.2d 825, 13 A.L.R.2d 252]) but she asserts that it was not the intention of the Legislature to limit the amount of recovery for a period of one year prior to the time of discovery rather than four years prior to such discovery when the right to underpayments had accrued prior to the amendment of section 11004.[3]

■ We observe here that if Canfield is entitled to recover underpayments such payments would be available to her only for the years 1969 and 1970. Canfield is not entitled to any benefits for the year 1971 because during that year she received the maximum amount allowable. The record is unclear as to when Canfield discovered the error or inadvertence of the County. It appears that such discovery occurred when she consulted an attorney following the imposition of the lien by the Internal Revenue Service in March 1974. Accordingly, assuming that the four-year limitation period was applicable, Canfield would be entitled, at most, to the underpayments for the year 1970 subsequent to March of that year. If the one-year statute is applicable Canfield would not be entitled to any underpayments since there were no underpayments in the year immediately preceding March 1974.

■ It is well settled that a statute is not to be given retrospective effect unless the Legislature has expressly so declared and this rule is particularly applicable when the statute affects vested rights. (*Balen* v. *Peralta Junior College Dist.,* 11 Cal.3d 821, 828 [114 Cal.Rptr. 589, 523

---

[3]We apprehend that section 11004 has the attributes of a limitations statute in that it is a statute of repose, enacted as a matter of public and legislative policy fixing the time within which particular rights must·be asserted and, as such, is intended to run against those who are neglectful of their rights and who fail to use reasonable and proper diligence in the enforcement thereof. (See *Neff* v. *New York Life Ins. Co.,* 30 Cal.2d 165, 169 [180 P.2d 900, 171 A.L.R. 563]; *Olivas* v. *Weiner,* 127 Cal.App.2d 597, 599-600 [274 P.2d 476].)

P.2d 629]; *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 172 [18 Cal.Rptr. 369, 367 P.2d 865]; *McBarron* v. *Kimball,* 210 Cal.App.2d 218, 220 [26 Cal.Rptr. 379]; *McKinney* v. *Ruderman,* 203 Cal.App.2d 109, 117-118 [21 Cal.Rptr. 263].) In the instant case subdivision (g) of section 11004 clearly interferes with a vested right, and in the absence of any language clearly showing retrospective operation must be construed to operate prospectively, i.e., subsequent to August 13, 1971. Accordingly, such rights may not be impaired by subsequent statutes. (*Grogan* v. *San Francisco,* 18 Cal. 590, 613; *Montgomery* v. *Kasson,* 16 Cal. 189, 194; and see *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851-853 [179 P.2d 799].)

■ The Director relies on section 13502 (repealed, Stats. 1973, ch. 1216, § 55, p. 2923), which provided: "All aid granted under the provisions of this chapter is granted and held subject to the provisions of any law hereafter enacted amending, repealing, or supplementing in whole or in part the provisions of this chapter, and subject to the rules and regulations of the department. No recipient under this chapter shall have any claim for compensation or otherwise because his aid is affected in any way by any such amending, repealing, or supplemental act, or by any such rule or regulation or by any addition, amendment, or repeal of such rules and regulations."

Such reliance is misplaced in view of the judicial decisions characterizing as a "debt" the county's obligation to pay an applicant aid as of the date the applicant is first entitled to receive aid and as characterizing as "vested" an applicant's right to receive benefits as of that date. Section 13502 cannot be interpreted so as to substantially destroy that right or defeat that obligation.

■ We conclude, therefore, that Canfield is entitled to the full amount of the underpayment which occurred during the period of four years immediately preceding the date the error or inadvertence was discovered by her. As already pointed out, the date of Canfield's discovery is unclear. ■ A remand for the purpose of ascertaining the date of discovery is not necessary, however, because we conclude that there is merit to Canfield's contention that the Director is estopped from denying Canfield's claim to the underpayment for the years 1969 and 1970 because of lateness.

■ "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be

acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ In the instant case, the Director, through his agent the County, was apprised of the facts. He recognizes that during the period in question the County had the responsibility of informing recipients of their duty to pay social security taxes for household employees and that Canfield was entitled to receive a larger grant in 1969 and 1970 because of such liability. ■ We observe that the requirement that a party must be apprised of the facts encompasses not only actual knowledge but conduct consisting of silence and acquiescence where the party ought to have known the real facts or where ignorance of such facts was occasioned by culpable negligence. (See *City of Long Beach* v. *Mansell,* 3 Cal.3d 462, 491, fn. 28 [91 Cal.Rptr. 23, 476 P.2d 423].)

■ It is further concluded that the facts of this case satisfy the second requirement, i.e., that the party to be estopped must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended. There is no question but that the County intended that Canfield would rely on its conduct. Subdivision (c) of section 11004 provides: "Any person who makes full and complete disclosure of those facts as explained to him pursuant to subdivision (a) is entitled to rely upon the award of aid as being accurate, and that the warrant he receives correctly reflects the award made, . . ." Subdivision (a) provides: "Any applicant for, or recipient or payee of, such public social services shall be informed as to the provisions of eligibility and his responsibility for reporting facts material to a correct determination of eligibility and grant."

Adverting to the third requirement, we observe that there is no question that Canfield was ignorant of the true facts, i.e., that she was obligated to pay social security taxes as an employer and that she was eligible to receive a grant of additional sums in order to pay such taxes. Nor is there any question that the fourth requirement is satisfied, i.e., that she relied on the County's conduct to her injury.

■ With respect to the application of equitable estoppel to the government the established rule is that the doctrine may be applied against the government where justice and right require it, but that an

estoppel will not be so applied if to do so would effectively nullify a strong rule of policy adopted for the benefit of the public. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 493.) Although we are not privy to the legislative intent in enacting subdivision (g) of section 11004, we do not perceive that the statute is declarative of a strong rule of policy adopted for the benefit of the public. We may speculate that the statute was enacted to prevent a recipient from receiving a windfall in the sum of a lump sum payment not related to the present needs of the recipient. Such a contention was rejected in *Bd. of Soc. Welfare* v. *County of L. A., supra,* 27 Cal.2d 81, 85-86, wherein it was held that the obligation to pay benefits becomes a debt due from the county to the applicant as of the date the latter was entitled to receive the aid. The reviewing court pointed out that the clear public purpose is to secure to those entitled to aid the full payment thereof from the date they were entitled thereto regardless of errors or delays by local authorities. (At p. 86.)

We observe that section 10000 provides that the purpose of public social services is "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, . . ." ▇ We apprehend that Canfield's receipt of retroactive payments directly relate to her present needs in view of the tax lien on her home and the possibility of a loss of that home to satisfy the lien. Accordingly, we do not perceive that the raising of an estoppel will result in a significant frustration of public policy but that to apply the doctrine of equitable estoppel in the present case is required by justice and right and is in keeping with the declared paramount public purpose of providing protection, care and assistance to those in need.

▇ We observe, further, that in determining whether an estoppel may be raised against a public agency an important consideration is the degree of "culpability or negligence of the public agency or its representatives in their conduct or advice" and "the seriousness of the impact or effect of such conduct or advice on the claimant." (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 306.) ▇ In the instant case Canfield was a person who purported to have no knowledge or training which would aid her in determining her rights. The public agency, on the other hand, purported to be informed and knowledgeable with respect to attendant care grants and the obligations of the recipient of such grants.

There existed a confidential relationship between the County and Canfield entitling Canfield to repose trust and confidence in the County whose representatives were cognizant of this fact. (See *Driscoll* v. *City of Los Angeles, supra,* at p. 308; *Vai* v. *Bank of America,* 56 Cal.2d 329, 338 [15 Cal.Rptr. 71, 364 P.2d 247].) Under these circumstances the conduct of the public agency may be deemed to have been unreasonable and to have had a serious impact or effect on Canfield.

It is concluded, therefore, that the Director was estopped to assert the provisions of subdivision (g) of section 11004.

The order is reversed with directions to the trial court to issue its peremptory writ of mandate directing the Director to set aside his decision dated October 23, 1974, and to reconsider Canfield's claim for underpayments of benefits for the years 1969 and 1970, without regard to her delay in requesting benefits, in accordance with the views herein expressed.

Sims, J., and Elkington, J., concurred.