[No. S.F. 25123. Aug. 17, 1989.]

CYNTHIA LENTZ et al., Plaintiffs and Respondents, v.
LINDA McMAHON, as Director, etc., et al., Defendants and
Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, John Davidson and Janet G. Sherwood, Deputy Attorneys General, for Defendants and Appellants.

Evelyn R. Frank and Alan Lieberman for Plaintiffs and Respondents.

**OPINION**

**LUCAS, C. J.**—We consider whether, in an administrative hearing in which the government seeks recoupment from a welfare recipient for overpayments, the recipient may assert equitable estoppel as a defense. We conclude a recipient may do so in appropriate circumstances.

### I. *Facts and Governing Statutory Law*

The State Department of Social Services (DSS) supervises administration by county welfare departments of various public assistance programs, including aid to families with dependent children (AFDC). If a recipient of such public assistance is dissatisfied with a decision by a county welfare department concerning his benefits, he is entitled to an administrative "fair hearing" before an administrative law judge employed by DSS. (Welf. & Inst. Code, § 10950 et seq.)[1] The hearing is an informal proceeding in which the rules of evidence do not apply, the recipient may appear with or without

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

counsel, and "free and open discussion by participants" is encouraged. (§ 10955.) After the hearing, the administrative law judge renders a proposed decision. The director of DSS may then affirm the decision, prepare a different decision based on the record, or order a rehearing. (§ 10959.) A recipient who is dissatisfied with the decision of the director may petition the superior court for review of the proceedings under section 1094.5 of the Code of Civil Procedure. (§ 10962.)

Before 1981, DSS rarely sought recoupment of overpayments to recipients. Former section 11004 provided that welfare payments could be reduced by the amount of a previous overpayment only if the recipient had income from which to recoup the amount sought. (Former § 11004, subd. (f); Stats. 1979, ch. 1170, § 9, p. 4564.) In 1981, however, Congress enacted legislation (42 U.S.C. § 602 (a)(22)) that requires state welfare agencies to "take all necessary steps to correct any overpayment . . . ," but which limits monthly recoupment to no more than 10 percent of current benefits. (*Id.*, subd. (A).) Our Legislature responded by amending section 11004 to provide, inter alia, that "Current and future grants payable [to a recipient] may be reduced because of prior overpayments to an extent consistent with federal law." (§ 11004, subd. (c).) In accord with federal law, the Legislature limited monthly recoupment to no more than 10 percent of current benefits, and no more than 5 percent of current benefits in cases involving "agency error." (*Ibid*.)[2] Thereafter, in a number of administrative proceedings in which recoupment was sought, DSS accepted recipients' assertions of equitable estoppel to bar recoupment of overpayments, in order to alleviate harsh consequences of recoupment when overpayment was caused by agency error.

In early 1983, however, DSS issued a memorandum announcing a new policy: "[T]he Director has considered this issue and has determined that equitable remedies are not appropriate in administrative hearing decisions. Therefore, the doctrine of equitable estoppel will no longer be applied in the Director's decisions."

The present action was brought by the California Coalition of Welfare Rights Organizations and by three recipients of AFDC. Each of the individual plaintiffs had been notified by her county welfare department that she

[2] The statute was thereafter amended in 1984, at which time subdivision (d) was added: "No determination of ineligibility shall be made retrospectively so as to result in an assessment of an overpayment in circumstances where there is a failure on the part of the applicant or recipient to perform an act constituting a condition of eligibility, if the failure is caused by an error made by a state agency or a county welfare department and if the amount of the grant received by the applicant or recipient would not have been different had the act been performed." Because the proceedings herein occurred before the effective date of subdivision (d), that subdivision does not apply.

had received excess benefits, and that her future benefits would be reduced to recoup the overpayment. Each sought a hearing, and in each case the hearing judge rendered a proposed decision finding the county welfare department equitably estopped from collecting the overpayment. In conformity with the new policy, the director of DSS refused to adopt these proposed decisions on the ground that the doctrine of equitable estoppel is unavailable in administrative hearings, and issued new decisions subjecting the individual plaintiffs to recoupment of overpaid benefits.

Plaintiffs sued the director of DSS, seeking (i) declaratory and injunctive relief requiring DSS to apply the doctrine of equitable estoppel in its hearings, and (ii) writs of mandate requiring the director of DSS either to adopt the hearing judge's decisions in the individual plaintiffs' cases or to reconsider those decisions and to apply the doctrine of equitable estoppel as appropriate. The trial court issued a permanent injunction and declaratory judgment that held illegal DSS's policy of refusing to consider claims of equitable estoppel in administrative hearings. The court enjoined DSS from "failing and refusing to consider and decide claims of equitable estoppel," and required DSS "to apply the doctrine of equitable estoppel, as warranted by the law and the facts, in administrative proceedings within [its] jurisdiction." The court also issued writs of mandate requiring DSS to reconsider the individual plaintiffs' claims and to apply equitable estoppel to those claims "if warranted by the law and the facts."

DSS appealed only from the portion of the judgment granting declaratory and injunctive relief, and not from the portion granting writs of mandate with respect to the individual plaintiffs' claims. The Court of Appeal reversed the judgment, holding application of equitable estoppel by DSS would violate two provisions of the state Constitution: article III, section 3 (separation of powers), and article VI, section 1 (reserving "judicial powers" to the courts).

## II. *Analysis*

### A. *Application of Equitable Estoppel Against County Welfare Agencies*

Before reaching the constitutional issues, we must consider whether the defense of equitable estoppel is available against county welfare agencies even in judicial proceedings. If the defense is unavailable in judicial proceedings, we need not address its application at the administrative level.

■ The modern doctrine of equitable estoppel is a descendent of the ancient equity doctrine that "if a representation be made to another who

deals upon the faith of it, the former must make the representation good if he knew or was bound to know it to be false." (Bigelow on Estoppel (6th ed. 1913) p. 603; see *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423].) We have described the requirements for the application of equitable estoppel as follows: " 'Generally speaking, four elements must be present . . . : (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*Mansell, supra,* 3 Cal.3d 462, 489, quoting *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

At common law, estoppel was unavailable against the government.[3] We have long held, however, that estoppel may be asserted against the government "where justice and right require it" (*City of Los Angeles* v. *Cohn* (1894) 101 Cal. 373, 377 [35 P. 1002]), and we have applied the doctrine against government entities in a variety of contexts.[4] At the same time, our cases recognize the correlative principle that estoppel will not be applied against the government if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public." (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124,

---

[3] See 4 Davis, Administrative Law Treatise (2d ed. 1983) section 20:2, page 3. The federal courts continue to take a restrictive approach to estoppel against the government, on the ground that such estoppel may interfere unduly with congressional prerogatives. (*Schweiker* v. *Hansen* (1981) 450 U.S. 785, 788-789 [67 L.Ed.2d 685, 689-690, 101 S.Ct. 1468] [*per curiam*; federal government cannot be estopped on basis of negligent reply to oral inquiry concerning eligibility for Social Security benefits].) This traditional approach has generated considerable criticism. (See 4 Davis, *supra,* § 20:5, pp. 9-15; Berger, *Estoppel Against the Government* (1954) 21 U.Chi.L.Rev. 680; Newman, *Should Official Advice be Reliable?—Proposals as to Estoppel and Related Doctrines in Administrative Law* (1953) 53 Colum.L.Rev. 374; Comment, *Never Trust a Bureaucrat: Estoppel Against the Government* (1969) 42 So.Cal.L.Rev. 391; Comment, *Estoppel Against the Government in California* (1956) 44 Cal.L.Rev. 340; see also *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323] ["It has been aptly said: 'If we say with Mr. Justice Holmes, "Men must turn square corners when they deal with the Government," it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' " (quoting Maguire & Zimet, *Hobson's Choice and Similar Practices in Federal Taxation* (1935) 48 Harv.L.Rev. 1281, 1299)].)

[4] See, e.g., *Mansell, supra,* 3 Cal.3d 462 (city and state estopped from asserting paramount title to land pursuant to constitutional inalienability of the land); *Lerner* v. *Los Angeles Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97] (board of education estopped to assert statute of limitations against teacher seeking reinstatement after city in good faith erroneously advised him reinstatement was unavailable); *Farrell* v. *County of Placer, supra,* 23 Cal.2d 624 (county estopped from asserting tort claims limitation statute after county agent advised injured plaintiff not to hire attorney); *Tyra* v. *Board of Police* (1948) 32 Cal.2d 666 [197 P.2d 710] (city estopped from asserting time limitation on pension claim after city's erroneous advice caused qualified pensioner to delay filing claim).

175 A.L.R. 747].) In *Mansell, supra,* 3 Cal.3d 462, we adopted a balancing approach to accommodate these concerns: "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Mansell, supra,* 3 Cal.3d 462, 496-497.) Applying this test in *Mansell,* we approved the application of estoppel to prevent a local government from asserting paramount title to land pursuant to a claimed constitutional right. (*Id.,* at pp. 499-500.) We have also considered application of estoppel to a variety of governmental actions. (See, e.g., *Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 310 [city estopped from asserting statute of limitations regarding pension benefits]; *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 27-29 [157 Cal.Rptr. 706, 598 P.2d 866] [application of estoppel denied to county employee who sought cash compensation for unused overtime credits].)

Although we have never considered the applicability of equitable estoppel in the context of public assistance, the Court of Appeal has done so. In *Canfield* v. *Prod* (1977) 67 Cal.App.3d 722 [137 Cal.Rptr. 27], the plaintiff received county benefits to pay an attendant who helped care for her. The county was statutorily obligated to (i) inform the plaintiff of her obligation to pay a federal employer's tax for her attendant and (ii) augment the plaintiff's grant to pay that tax. The county failed to either inform the plaintiff of her obligation or augment her grant during 1969 and 1970, and in 1974 a federal tax lien was placed on her home for delinquent taxes and penalties.

The *Canfield* court held the county was estopped from asserting the applicable claims limitation statute against the plaintiff's 1974 claim for augmented 1969-1970 benefits. Applying the *Mansell* test, the court concluded that application of estoppel would not frustrate a strong rule of public policy because the probable reason for the limitation statute—to prevent recipients from receiving windfall benefits unrelated to their present needs—was inapplicable in the circumstances of the case, in which the plaintiff was threatened with the loss of her home. (*Canfield, supra,* 67 Cal.App.3d at p. 732.) The court also found that a confidential relationship existed between the plaintiff and the county, and that the county's error had seriously affected the plaintiff's actions. (*Id.,* at pp. 732-733.)

We find *Canfield*'s result sound. On the "burden on the individual" side of the *Mansell* balance, we note that welfare benefits, like the pensions involved in *Driscoll, supra,* are intended to provide basic means of subsis-

tence to recipients. Welfare department workers, who purport to advise and direct recipients, clearly stand in a confidential relation to them. (See *Driscoll, supra,* 67 Cal.2d at p. 308, fn. 11.) And, as demonstrated by the facts in *Canfield,* a recipient's justified reliance on a county welfare department can produce compelling hardship. The failure to apply estoppel in such circumstances may cause serious injustice.

On the "policy" side of the *Mansell* balance, the interests represented by the statute of limitations—to encourage the timely presentation of claims and prevent windfall benefits—were not seriously undermined by the application of estoppel in the circumstances of *Canfield, supra,* 67 Cal.App.3d 722. Estoppel against a county's assertion of purely *procedural* preconditions and limitations on benefits, when the county itself is responsible for the procedural default, will not defeat the underlying statutory policy of safeguarding accurate and orderly administration of the welfare system. The policy considerations may well be different, however, when *substantive* preconditions of benefits are in issue.

The latter point is illustrated in decisions of our sister states, most notably Oregon. In *Glover v. Adult & Family Services Division* (1980) 46 Ore.App. 829 [613 P.2d 495], the court held a welfare agency was estopped from applying its "prior authorization" requirement, and thereby declining to cover costs for medical treatment. The court noted that the applicant was substantively eligible for the services, and had in fact taken the necessary steps to secure prior authorization, and that the agency was responsible for failing to properly process the authorization forms. (613 P.2d at pp. 499-500.) In *Thrift v. Adult & Family Services Division* (1982) 58 Ore.App. 13 [646 P.2d 1358], however, the court declined to apply estoppel in the case of an applicant who, through agency error, received an amount of public assistance funds greater than that to which she was substantively entitled. Distinguishing *Glover, supra,* the court held, "[t]his is not a case where agency error caused the petitioner to lose a benefit to which she was otherwise entitled" (644 P.2d at p. 1360), and affirmed a recoupment award against the applicant. (Accord, *Howard v. Employment Div.* (1983) 63 Ore.App. 227 [663 P.2d 429, 432].)[5]

■ We similarly conclude that estoppel against a welfare agency may be appropriate when, as in *Canfield, supra,* 67 Cal.App.3d 722, a government agent has negligently or intentionally caused a claimant to fail to comply

---

[5]Other states have implicitly recognized the same distinction. See *Herndon v. Colorado Board of Social Services* (Colo.Ct.App. 1974) 528 P.2d 395, 398; *Matter of Bryson v. Blum* (1983) 97 A.D.2d 514 [467 N.Y.S.2d 884, 885]; but see *West v. Dept. of Social and Health Services* (1978) 21 Wn.App. 577 [586 P.2d 516, 518] (welfare agency estopped from recouping child support costs).

with a *procedural* precondition to eligibility, and the failure to invoke estoppel would cause great hardship to the claimant. A more difficult question is posed, however, when estoppel is asserted against the government to defeat *substantive* limitations on eligibility for public benefits. To bar recoupment of benefits from a person whose circumstances did not qualify him for such benefits under applicable substantive eligibility rules might amount to a bestowal of benefits not contemplated by the Legislature. In this regard, we share the United States Supreme Court's view that it is "'the duty of all courts to observe the conditions defined by [the legislative branch] for charging the public treasury.'" (*Schweiker* v. *Hansen, supra,* 450 U.S. at p. 788 [67 L.Ed.2d at p. 689].)[6] We need not decide here, however, whether there are situations in which the nature of the official misconduct and the resulting hardship on a substantively ineligible recipient would be sufficient to outweigh the burden on the government, and hence support a claim of estoppel under *Mansell, supra,* 3 Cal.3d 462, *Driscoll, supra,* 67 Cal.2d 297, and *Longshore, supra,* 25 Cal.3d 14.

B.  *Application of Equitable Estoppel in DSS "Fair Hearings"*

■  The question next arises whether the determination that estoppel is applicable in a given case can be made at the administrative hearing, or whether the estoppel issue must be resolved in a judicial proceeding. We examine first the statutory scheme governing the hearing process.

1.  *The Statutory Scheme*

The applicable statutes do not specifically require the director of DSS to apply equitable estoppel in fair hearings. They do provide, however, that "[t]he provisions of law relating to a public assistance program shall be *fairly and equitably construed* to effect the stated objects and purposes of the program." (§ 11000, italics added.)[7] "The statutory scheme reveals that the fair hearing mechanism is intended to provide an aggrieved welfare recipient with a speedy (see *id.,* § 10952) and informal (see *id.,* § 10955) means to challenge an administrative action which may reduce or terminate vitally needed social service benefits." (*People* v. *Sims* (1982) 32 Cal.3d 468, 493-494 [186 Cal.Rptr. 77, 651 P.2d 321] [Kaus, J., dis.].) The matters addressed at such hearings "shall be limited to those issues which are reasonably related to the request for hearing or other issues identified by either party which they have mutually agreed, prior to or at the hearing, to

---

[6] We note that *Hansen,* although rejecting a claim of estoppel based on a merely negligent response to an oral inquiry concerning eligibility for Social Security benefits, left open the possibility that "affirmative misconduct" by the government could be sufficient to justify estoppel. (*Schweiker* v. *Hansen, supra,* 450 U.S. 785, 788-789 [67 L.Ed.2d at p. 689-690].)

[7] Similar provisions apply to other nonconstitutional agencies. (See *post,* fn. 10.)

discuss." (§ 10958.1.) ■ Other than this provision, "[t]he statutes impose no limitation, factual or legal, upon the issues which may be raised in the 'fair hearing.'" (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 674 [170 Cal.Rptr. 484, 620 P.2d 1032].)

Either the applicant or the county may seek judicial review of the "fair hearing" decision under the administrative mandamus provisions of Code of Civil Procedure section 1094.5. (§ 10962.) Judicial review encompasses "the entire proceedings in the matter, upon questions of law involved in the case. Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision." (*Ibid.*)

We confronted an analogous problem involving the same statutory scheme in *Woods* v. *Superior Court, supra,* 28 Cal.3d 668. There we held that applicants may challenge the validity of DSS regulations at the hearing stage even if no factual question is presented. Our unanimous opinion by Justice Richardson observed, "The general principle that courts should not be burdened with matters which can be adequately resolved in administrative [fora], frequently expressed in the rule requiring exhaustion of administrative remedies [citations], is founded at least in part on the wisdom of the efficient use of governmental resources. [Citation.] Such use serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights. Permitting administrators an opportunity to construe challenged regulations in a manner to avoid their invalidation is preferable to requiring a court challenge. Moreover, in those cases in which the validity of [a challenged] regulation must be judicially resolved, the task of a reviewing court is simplified by a narrowing and clarification of the issues in an administrative hearing." (*Id.*, at pp. 680-681.)

The same reasoning is applicable, with even greater force, in the present context. ■ The existence of estoppel is largely a question of fact, although the weighing of policy concerns that must be conducted in a case of estoppel against the government is in part a question of law. In light of the Legislature's purpose in providing a speedy and informal mode of resolving welfare disputes (subject to administrative mandamus review), it is appropriate to construe the scheme as requiring that these largely factual claims be heard in the administrative hearing, despite the absence of specific statutory authorization for such a defense.

*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323], does not alter our conclusion. ■ In *Dyna-Med* we simply followed the established rule that, in the absence of express legislative authorization for *punitive damages*, such

damages may not be imposed by an administrative agency. (*Id.*, at pp. 1388, 1393; see also, e.g., *Chauffeurs Loc. U. 238* v. *Civil Rights Com'n* (Iowa 1986) 394 N.W.2d 375, 384, and cases cited.) We did not there suggest that use of equitable remedies or doctrines were subject to a similar rule; in fact, we suggested otherwise. (See 43 Cal.3d at p. 1387 [distinguishing "back pay" from punitive damages because the former remedy is "exclusively corrective and equitable in kind"].)

Moreover, *Dyna-Med* arose in the context of a statutory scheme significantly different from the one at issue here. The claimant in *Dyna-Med* had a choice whether to seek administrative or judicial relief. (43 Cal.3d at p. 1402.) In the present case, by contrast, the claimant is provided a hearing and administrative mandamus review as his *exclusive* remedy. The Legislature's designation of the hearing as the only forum for public-benefits claims supports the view that it intended all potential issues affecting such claims to be raised in that forum. We thus conclude that the statutory scheme permits DSS to consider claims of equitable estoppel raised by recipients in fair hearings.[8]

### 2. *Judicial Powers and Separation of Powers*

Article VI, section 1 of our Constitution provides: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. . . ." Article III, section 3 provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." ■ These two provisions preclude exercise of judicial power by "nonconstitutional" administrative agencies—i.e., those agencies whose authority is derived solely from a grant of power by the state or local governmental entity—but they do not limit the power of those agencies whose authority is derived from the Constitution itself. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36 [112 Cal.Rptr. 805, 520 P.2d 29]; see

---

[8]Additionally, we note that if equitable estoppel claims were not considered in DSS hearings, no record and findings thereon reviewable under Code of Civil Procedure section 1094.5 would be produced. If that were the case, the doctrine of exhaustion of administrative remedies might be inapplicable to such claims, and claimants would be allowed to bring ordinary mandamus actions against the director under Code of Civil Procedure section 1085. (See *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 565-566 [55 Cal.Rptr. 505, 421 P.2d 697].) The practical problems of requiring or permitting a claimant to seek ordinary mandamus relief in order to assert a claim of equitable estoppel—with evidentiary court hearings and the attendant inconvenience and expense to the parties and the judicial system—would contravene the purpose of the statutory scheme, if not the express provision that review under Code of Civil Procedure section 1094.5 "shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision." (§ 10962.)

*McHugh* v. *Santa Monica Rent Control Bd., ante,* 348, at pp. 355-356 [261 Cal.Rptr. 318, 777 P.2d 91] [examples of "constitutional" and "nonconstitutional" agencies].)

■ DSS claims the Constitution precludes application of equitable estoppel in administrative hearings. Its premise is that the application of equitable estoppel is an exercise of "judicial power." It then asserts that the Constitution does not "permit" DSS to exercise judicial powers, and that because the Legislature is precluded from vesting judicial powers in a legislatively created administrative agency, application of equitable estoppel by DSS would violate the judicial-powers and separation-of-powers clauses of our Constitution. The Court of Appeal embraced this analysis.

We reject the underlying premise. The assertion that application of equitable estoppel is an exercise of "judicial power" within the meaning of article VI, section 1 or article III, section 3 ignores the constitutional development of administrative law over the last half century (see *McHugh, supra, ante,* at pp. 365-366, fns. 17, 18), has no support in our cases, and finds no support in the decisions of our sister states.

DSS suggests that because equitable estoppel was applied by the English courts of chancery (3 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 802, p. 179), and because a long-repealed provision of our 1879 Constitution granted jurisdiction to the superior courts in cases of equity and law (see former Cal. Const., art. VI, § 5, reprinted in Historical Note, 2 West's Ann. Cal. Codes, Constitution (1954 ed.) pp. 308-309), only our state courts may apply the doctrine of equitable estoppel. Under this novel reasoning, nonconstitutional administrative agencies would be rendered impotent. They would be precluded not only from adjudicating claims of equitable estoppel, but also, under all circumstances, from imposing equitable remedies,[9] and even from applying general principles of law and "equity" in reaching administrative determinations.[10]

---

[9] Presently such agencies routinely impose equitable remedies. The Fair Employment and Housing Commission (FEHC; Gov. Code, § 12903), for example, has the power to order (i) "hiring, reinstatement, or upgrading of employees" who have been victims of unlawful practices (*id.,* § 12970, subd. (a)), and (ii) "sale or rental of a housing accommodation if it is still available, or the sale or rental of a like housing accommodation . . ." as a remedy for housing discrimination (*id.,* § 12987, subd. (1)). (See *McHugh, supra, ante,* at p. 360, fn. 8 [noting that the constitutional authority of the FEHC has not yet been determined].) Similar agencies of our sister states also routinely exercise such power. See, e.g., *Kentucky Com'n on Human Rights* v. *Fraser* (Ky. 1981) 625 S.W.2d 852, 853 (the "Commission may impose any of several sanctions, including cease and desist orders, reinstatement of employees, admission of employees to training programs, [and] rental of property to an individual . . .").

[10] Nonconstitutional agencies regularly employ general principles of equity. For example, the Unemployment Insurance Appeals Board is permitted to waive recoupment of overpayments if waiver is required by "equity and good conscience." (Unemp. Ins. Code, § 1375,

We reject such a sweeping approach. First, as we recently explained in *McHugh, supra, ante*, at page 348, there are circumstances in which administrative agencies may employ equitable remedies. (*Id.*, at p. 372.) Second, DSS fails to explain why the courts should have exclusive authority to employ equitable or legal principles or defenses merely because such principles or defenses developed in the courts. Nor does it explain in what way the challenged power here—the application of equitable estoppel—is an inherently "judicial" power that differs significantly from powers regularly and without challenge exercised by administrative agencies.

Decisions of our Courts of Appeal disclose that equitable estoppel has been routinely applied in administrative hearings, and never has it been suggested that doing so violates article VI, section 1, or any other constitutional provision. (See *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 573, 579-586 [108 Cal.Rptr. 293] [applying estoppel to prevent retroactive reclassification of civil service employees]; see also *Pittsburgh Unified School Dist.* v. *Commission on Judicial Competence* (1983) 146 Cal.App.3d 964, 980 [194 Cal.Rptr. 672] [failure to assert estoppel before board precludes raising the defense in court]; *Mount Vernon Memorial Park* v. *Board of Funeral Directors and Embalmers* (1978) 79 Cal.App.3d 874, 886-888 [145 Cal.Rptr. 275] [affirming the board's and trial court's findings of no factual basis for estoppel].) Again, the decisions of our sister states are in accord. (E.g., *Thrift, supra,* 646 P.2d 1358, 1359 [administrative hearing officer erroneously concluded "estoppel did not apply"]; see also *Herndon, supra,* 528 P.2d 395, 398 [suggesting estoppel should have been applied at the administrative level]; *Best* v. *Stetson* (1st Cir. 1982) 691 F.2d 42, 45 [remanding to administrative agency for determination of equitable estoppel claim]; *Akbarin* v. *Immigration and Naturalization Service* (1st Cir. 1982) 669 F.2d 839, 845 [same].)

We conclude that administrative application of equitable estoppel does not constitute exercise of "judicial power" within the meaning of article VI, section 1 or article III, section 3. We find nothing inherently "judicial" in the application of equitable estoppel, and we reject DSS's argument to the contrary. Indeed, as noted above, if it were otherwise judicial review of administrative determinations would be greatly frustrated (*ante* at pp. 403-404). ■ ■■■■ We find no constitutional bar to DSS's authority to apply equitable estoppel at its administrative hearings.[11]

---

subd. (b); see *Gilles* v. *Department of Human Resources Development* (1974) 11 Cal.3d 313, 322-326 [113 Cal.Rptr. 374, 521 P.2d 110, 90 A.L.R.3d 970] [agency must consider equity in ruling on recoupment claims].) Similarly, the Commissioner of Corporations is required to determine whether a restabilization plan is "fair, just, or equitable" (Corp. Code, § 25140, subd. (a); see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 147-148 [93 Cal.Rptr. 234, 481 P.2d 242]).

[11] We also reject DSS's assertion that application of equitable estoppel would contravene article III, section 3.5 of our state Constitution. That section prohibits an administrative

### III. *Conclusion*

We conclude that, under appropriate circumstances, a recipient of welfare benefits may raise the defense of equitable estoppel; the relevant statutes contemplate application of the defense at DSS hearings; and our Constitution does not preclude application of the equitable estoppel doctrine at DSS administrative hearings. The judgment of the Court of Appeal is reversed.

Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kaufman, J., and Arguelles, J.,* concurred.

---

agency from "refus[ing] to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional . . . ." (*Id.*, subd. (a).) This provision is inapplicable here. As we explained above, by applying equitable estoppel in appropriate circumstances DSS would not be "refusing to enforce" the recoupment statute, but would instead be acting consistently with the Legislature's intent that DSS be permitted, in certain cases, to apply equitable estoppel in "fair hearings."

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.