[Civ. No. 3804.   Fourth Dist.   Mar. 4, 1948.]

FIRST NATIONAL BANK IN SANTA ANA (a National Banking Association), Respondent, v. COAST CONSOLIDATED OIL COMPANY (a Corporation), Appellant.

L. M. Cahill for Appellant.

Forgy, Reinhaus & Forgy for Respondent.

GRIFFIN, J.—On March 30, 1938, Elmer Clark and wife executed a deed of trust in the sum of $180,092.03, to secure an obligation to the plaintiff and respondent First National Bank in Santa Ana. It was recorded July 11, 1938. Prior to that time the Title Insurance & Trust Company, predecessor in interest of the Clarks, executed an oil and gas lease dated November 16, 1937, and recorded December 28, 1937, to defendant and appellant Coast Consolidated Oil Company, as lessee. It was for a term of 20 years and so long thereafter as oil or gas should be produced.

Paragraphs 5 and 6 thereof provided generally for the rental to be paid and "lessee agrees to commence the actual erection of a steel derrick upon said land within 60 days from date hereof and actual drilling operations . . . within 90 days," etc.

Paragraph 21 provides that if lessee defaults thereunder and after written notice thereof, the lessor may terminate the lease in its entirety.

On January 20, 1939, Dana Point Corporation became the owner of the property described in the complaint. Title Insurance & Trust Company also transferred of record, the oil lease to it. On January 30, 1940, plaintiff executed and delivered to the trustee under the deed of trust a declaration of default and demand for sale. For some undisclosed reason this sale was postponed, from time to time, to March 27, 1944. A few hours before the foreclosure sale was held, the record owner of the property, Dana Point Corporation, and the defendant, lessee under the oil lease, executed an agreement in writing for the modification of the oil lease. This agreement provided that lessor waived any and all defaults upon the part of lessee existing under their lease dated November 16, 1937, and that lessee was relieved of all liability for said defaults and the said lease was declared to be in full force and effect; that said lease was modified and amended by the omission of all of paragraphs 5 and 6 thereof and there was substituted in place thereof the following: "Lessee agrees to commence . . . drilling . . . within seven years from date hereof" and that the lease may be assigned without consent of lessor. The written agreement above mentioned, and which is before us, does not bear evidence of having been recorded. Apparently it was executed without the knowledge of plaintiff. The sale was held and the plaintiff, beneficiary, purchased the property and received a trustee's deed dated March 27, 1944, and recorded March 31, 1944.

On April 13, 1945, plaintiff mailed to defendant a notice that plaintiff was and had been the owner of the premises since March 27, 1944, and that defendant had not paid to it the $625 per month as provided in paragraph 5 of the oil lease; that there was $8,125 due thereunder; that defendant had not complied with the drilling requirements specified in paragraph 6 of the oil lease which was dated November 16, 1937.

On December 9, 1946, this action was filed alleging only the simple allegations of a quiet title action against defendant and appellant and others. Defendant and appellant answered and denied generally the allegations of the complaint. It concedes that plaintiff is now the owner of the real property in question but the answer denies plaintiff's right to possession thereof by reason of the original lease and the written amendment thereto which was set up in defendant's answer.

The cause proceeded to trial on the issues thus raised. No oral testimony was taken. Plaintiff introduced the trustee's

deed and a certified copy of a final decree in an action quieting plaintiff's title against Dana Point Corporation to the real property involved, which decree was dated November 16, 1944. Plaintiff rested. Defendant introduced the oil and gas lease dated November 16, 1937, and modification of lease dated March 26, 1944, and rested. Plaintiff then introduced, without objections, a claimed copy of a notice to Coast Consolidated Oil Company, setting forth the terms of the trust deed, and recorded lease, alleging that the oil company was in default "under said lease," and specified the particulars; that it was required to remedy each of the defaults within 30 days from April 20, 1945, or the lease would be terminated in its entirety according to its terms. Attached to said copy is an affidavit that the affiant, on April 13, 1945, placed a copy of the "within notice of default" in an envelope addressed to Coast Consolidated Oil Company, c/o Arthur Holliday, Dana Point, California, which is the address of the said corporation, and mailed it. Attached thereto is a return registered receipt signed "Coast Consolidated Oil Co., . . . Mrs. Arthur Holliday," under which name are the printed words: "Signature of Addressee's Agent." It was dated April 16, 1945.

The trial court found generally in accordance with the facts above related; that plaintiff was the "owner and *entitled to the possession* of the" described real property; that the claims of defendant were without right and that defendant never complied with any of the terms of said lease requiring drilling or the payment of any rentals; that plaintiff duly gave notice of default under said lease; that plaintiff thereafter terminated said lease in accordance with its terms by reason of said defaults; that the agreement of March 26, 1944, was never recorded and was entered into without the knowledge or consent of the plaintiff herein, the plaintiff being both trustee and beneficiary under said trust deed; that the agreement was in derogation of plaintiff's title and therefore void as against the plaintiff and that said contract of March 26, 1944, between said Dana Point Corporation and the defendant Coast Consolidated Oil Company was of no force and void as against the plaintiff herein. Judgment was entered accordingly.

Defendant, in its brief, admits the judgment is amply supported by the findings of fact and conclusions of law, but maintains the judgment cannot stand because the findings and conclusions upon which it is based are not supported by the evidence and in some instances are contrary to all the

evidence. It is also argued that plaintiff's *right to possession* is not sustained but is subject to defendant's rights under the oil and gas lease of November 16, 1937, because defendant's lease is prior in time and in recordation to the foreclosed trust deed.

In this connection it is likewise suggested that there was not sufficient evidence as to who Mr. and Mrs. Holliday might be, or that the notice received by her was a proper notice to defendant corporation and in accordance with the notice required under the oil and gas lease. We see little merit to this contention insofar as it pertains to the original oil and gas lease, particularly in view of the terms of the notice received in evidence, without objection, and the return receipt card and affidavit of mailing attached thereto. Under section 1963, subdivision 24 of the Code of Civil Procedure there is a presumption "That a letter duly directed and mailed was received in the regular course of the mail." (See, also, *Wright* v. *Western States Life Insurance Co.*, 61 Cal.App. 488, 490 [214 P. 990] ; 39 Am.Jur. p. 249, § 28.)

Since this appeal was perfected plaintiff moved to take additional evidence. A stipulation of fact resulted. The evidence now fully supports the court's finding that defendant was in default and had not remedied such default at the time this action was commenced.

Defendant, in its pleadings and in the trial court proceeded upon the theory that even though it was in default under the original lease, its rights now depended on the lease as modified by the agreement of March 26, 1944.

Although there are certain other minor points attempted to be raised on this appeal, the real point which was raised by the defendant, presented and decided by the trial court, resolved itself into the question whether the defendant and the Dana Point Corporation had the right, under the circumstances related, to change and modify the original recorded lease and agreement by an amended unrecorded agreement and thereby waive all defaults, forfeitures and penalties under the original lease and to postpone the drilling requirements from the original 90 days to seven years, to the detriment of the rights of plaintiff, who was not a party to the amended agreement. Defendant strenuously argues the point but cites no cases in support of it.

Plaintiff's position is, and the trial court found, that the modification of the lease did not bind the trust deed purchaser;

that as between the lessor and lessee it might be true that they could make a valid modification agreement, but as to the rights of plaintiff, who was trustee and beneficiary under the trust deed and also purchaser at the sale foreclosing the trust deed, the modification did not affect its interest and its title since the purchase *related back to the date of the trust deed.* (Citing *Bank of America* v. *Hirsch Mercantile Co.,* 64 Cal. App.2d 175 [148 P.2d 110] ; *Rorex* v. *Karcher,* 101 Okla. 195 [224 P. 696].) Respondent therefore argues that since it did not know of the ''full nature of the attempted sabotage'' until the time of trial, it should not be bound by the secret agreement pleaded.

Our research has not disclosed, nor do counsel point to any California case directly bearing on this question. However, we are convinced that the cited case of *Rorex* v. *Karcher, supra,* is sufficient authority to support respondent's contention. There, a landowner executed an oil and gas lease to defendants on November 1, 1913. On December 11, 1917, and while defendant's lease was still in force, the landowner executed a lease to plaintiff for a period of one and one-half years. Defendant's lease would have expired on November 1, 1918, but on September 26, 1918, the defendant procured an extension of the lease for a period of one year. It was held that the lease executed by the owner of the fee to the plaintiff was a valid lease, although executed while there was a valid lease on the property, and the defendant's rights under the extension agreement were subject to the superior rights of the plaintiff under his lease. If it should be held otherwise, the Dana Point Corporation and the defendant lessee, by secret agreement, might well have extended the oil drilling lease here involved for many years, and may have waived all future payments or drilling requirements. This would greatly reduce the value, the property interests, and also the security for the trust deed holder and should not be permitted without its consent or agreement to such subordination. See *Bank of America* v. *Hirsch Mercantile Co., supra,* where this court also held that the title of a purchaser at a trustee's sale related back to the date of the trust deed. ▮ A trust deed conveys the *legal title* to the property to the *trustee,* subject to the execution of the trust. (Civ. Code, § 863; 25 Cal.Jur. § 27, p. 38.)

▮ Therefore, we must conclude that the lessor, by the extension agreement with the lessee, could not, without notice,

knowledge or consent of the plaintiff, create a greater burden on the property, or carve any estate therefrom, other than that reserved to it under the original lease, without making such extension agreement and its additional burdens subject to the superior rights of the plaintiff under the trust deed.

In *Tropical Investment Co.* v. *Brown,* 45 Cal.App. 205 [187 P. 133], it was held that where a trust deed to secure a loan is taken without notice of a lease of the premises (in this case it was an extension of time within which to commence drilling and the waiver of default under the original lease), the lessee's interest under such lease is foreclosed by the foreclosure of the deed of trust. (See, also, 14 A.L.R. 676 and 680.)

The only other point worthy of note is the contention that plaintiff failed to comply with section 2924 of the Civil Code in reference to the sale of the property under the trust deed. It is claimed that the proceedings taken by the trustee were defective, invalid, and did not pass title and possession of the property to the beneficiary because from a recitation in the trust deed it appears that the sale of the property was postponed, from time to time, to a date more than the four years after the date prescribed in the notice of sale. No authority is cited by defendant in support of the argument. There is no merit to this contention. The trust deed in evidence specifically recites that "3. Trustee may postpone sale of all, or any portion, of said property by public announcement at the time fixed by said notice of sale, and may thereafter postpone said sale from time to time by public announcement at the time fixed by the preceding postponement; and without further notice it may make such sale at the time to which the same shall be so postponed . . ."

In *Cobb* v. *California Bank,* 6 Cal.2d 389 [57 P.2d 924], it was definitely held that where deeds of trust provide that the trustee may from time to time postpone a sale by proclamation made at the time of postponement, no further notice need be given by posting or publication. (See, also, *Alameda County Home Investment Co.* v. *Whitaker,* 217 Cal. 231 [18 P.2d 662]; *Bertschman* v. *Covell,* 205 Cal. 707 [272 P. 571].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.