[No. G012159. Fourth Dist., Div. Three. June 28, 1993.]

R-RANCH MARKETS #2, INC., Plaintiff, Cross-defendant and Appellant,
v.
OLD STONE BANK, Defendant, Cross-complainant and Appellant;
ALPHA BETA ACME MARKETS, INC., Cross-defendant and
Respondent.

## COUNSEL

John L. Dodd and Samuel Cubete for Plaintiff, Cross-defendant and Appellant.

Call, Clayton & Jensen and Tonia T. Kittelson for Defendant, Cross-complainant and Appellant.

Hart, King & Coldren, Robert S. Coldren and Pat V. O'Connell for Cross-defendant and Respondent.

## OPINION

**MOORE, J.**—This case involves cross-appeals from a declaratory relief judgment concerning the rights of the parties to a commercial lease and the rights of the beneficiary under a deed of trust who eventually purchased the property at a nonjudicial foreclosure sale. The primary issues presented are whether the foreclosure under the trust deed extinguished the lease itself, whether the foreclosure extinguished an amendment of the lease made after the trust deed was recorded, and whether assignments of the lease made subsequent to the trust deed are valid.

### FACTS

In May 1961, Alpha Beta Acme Markets, Inc. entered into a lease with Lenhardt Corporation for the anchor tenant space at Valley Center Shopping Center. The lease provided in part, "Lessee shall not transfer, assign, sublet, or hypothecate this Lease or Lessee's interest . . . . Any such attempted

transfer, assignment, subletting, or hypothecation shall be void and confer no rights upon any third person, and shall constitute a default by Lessee under this Lease." The lessee could assign the lease with the lessor's written consent.

On December 5, 1986, Old Stone Bank loaned $7.4 million to Valley Center Venture for the purchase and remodelling of the shopping center, and secured the same by recording a first deed of trust. Old Stone obtained and recorded subordination agreements from all tenants except Alpha Beta.

On June 5, 1987, Valley Center and Alpha Beta executed an amendment to the lease, stating "Tenant [has] the right to assign or sublet its interest in the Lease without Landlord consent to any entity operating the same type of general grocery operation presently conducted by Tenant as of the date of this Amendment." Valley Center did not request Old Stone's consent to the amendment and did not advise Old Stone there was any amendment.

On January 20, 1988, Alpha Beta assigned its interest in the lease, as modified by the amendment, to R-Ranch Markets #2, Inc. Nothing in the record indicates R-Ranch or Alpha Beta sought Valley Center's consent to the assignment. However, Valley Center had knowledge of the assignment, did not object, and accepted rent payments from R-Ranch. Old Stone subsequently learned about the assignment and also did not object to it.

In March 1990, R-Ranch and Tham's executed escrow instructions assigning the lease to Tham's, which also intended to operate a grocery store. R-Ranch notified Old Stone it was assigning the lease to Tham's, but once again did not seek Valley Center's consent. However, Valley Center knew of the assignment, did not object, and accepted rent payments.

On April 16, Old Stone sent a letter to R-Ranch asserting the proposed Tham's lease assignment would not be enforceable against Old Stone or any other purchaser at any forthcoming foreclosure sale. Notwithstanding, Tham's took possession of the premises on June 25.[1] On December 7, Old Stone acquired the shopping center at a trustee's sale conducted under the terms of the deed of trust, refused to accept further rent payments from Tham's, and demanded Tham's surrender possession of the premises.

R-Ranch sued Old Stone for declaratory relief, and negligent and intentional interference with economic relationship. Old Stone cross-complained

---

[1] Although at trial R-Ranch's counsel represented both R-Ranch and Tham's, Tham's is not formally a party to this appeal and the record is unclear as to whether it had knowledge of Old Stone's objection to the assignment.

against R-Ranch, Alpha Beta, and Tham's for declaratory relief, quiet title, and ejectment. Following a court trial, judgment was entered finding: (1) The original lease had priority over Old Stone's deed of trust; (2) Old Stone, as buyer at the trustee's sale, took title to the premises subject to the original lease; (3) the subsequent lease amendment was invalid as against Old Stone; and (4) the subsequent assignments of the lease from Alpha Beta to R-Ranch and from R-Ranch to Tham's were valid. These appeals by R-Ranch and Old Stone followed.

DISCUSSION

A. <em>The Lease</em>

Old Stone first argues the trial court erred by finding the lease was not extinguished by its foreclosure on the property under the trust deed. We disagree.

■ "A trustee's deed conveys the absolute legal title to the purchaser, as against all claims subordinate to the deed of trust, but subject to all prior rights, interests, and titles." (*Brown* v. *Copp* (1951) 105 Cal.App.2d 1, 6 [232 P.2d 868].) "[W]here a trust deed to secure a loan is taken without notice of a lease of the premises, . . . the lessee's interest under such lease is foreclosed by the foreclosure of the deed of trust." (*First Nat. Bank* v. *Coast Consol. Oil Co.* (1948) 84 Cal.App.2d 250, 256 [190 P.2d 214] (hereafter *First Nat. Bank*); see also *Tropical Investment Co.* v. *Brown* (1919) 45 Cal.App. 205, 211 [187 P. 133].) Therefore, if the trustor has notice, actual or constructive, of an encumbrance which existed prior to the trust deed, the trustor takes title to the property subject to the encumbrance.

The trial court found the lease was not extinguished because it was prior in time to the deed of trust. The record establishes Old Stone had knowledge of the original lease. It reviewed all of the leases relating to the shopping center, including the original lease, prior to making the loan and recording the deed of trust. The court was correct in finding the lease was not extinguished.

B. <em>The Amendment to the Lease</em>

R-Ranch and Alpha Beta contend the court erred by holding the 1990 foreclosure of Old Stone's deed of trust extinguished the 1987 amendment to the lease. They argue the court erred in relying upon *First Nat. Bank*.

In *First Nat. Bank*, the Clarks' predecessor in interest had executed an oil and gas lease in favor of Coast Consolidated Oil Company which was

recorded on December 28, 1937. In July 1938, the Clarks executed and recorded a deed of trust securing an obligation to First National Bank.

On January 20, 1939, Dana Point Corporation became owner of the property and transferee of the oil lease. First National commenced foreclosure proceedings and a sale was held on March 27, 1944. A few hours before the foreclosure sale was held, however, Dana Point and Coast executed an agreement modifying the oil lease to provide that the "lessee was relieved of all liability for said defaults and the said lease was declared to be in full force and effect . . ." The amendment was executed without notice to First National and was not recorded.

After the foreclosure sale, First National notified Coast of numerous defaults under the lease, then brought a quiet title action. The trial court held Coast had defaulted under the lease and that the amendment was void. The Court of Appeal affirmed and held "the lessor, by the extension agreement with the lessee, could not, without notice, knowledge or consent of the plaintiff, create a greater burden on the property, or carve any estate therefrom, other than that reserved to it under the original lease, without making such extension agreement and its additional burdens subject to the superior rights of the [trustor] under the trust deed." (*First National, supra,* 84 Cal.App.2d at pp. 255-256.)

 Here, Valley Center entered into the lease amendment without Old Stone's consent. It never provided Old Stone with a copy of the amendment and never told Old Stone of the existence of the amendment. Furthermore, the amendment substantially increased the burden on the property and security without Old Stone's consent.

When property is sold under a trust deed, the purchasers acquire title free and clear of all encumbrances subsequent to the deed of trust. (See, e.g., *Weber* v. *McCleverty* (1906) 149 Cal. 316, 323 [86 P. 706]; *Dover Mobile Estates* v. *Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498 [270 Cal.Rptr. 183].) The policy underlying the rule is to protect lending institutions from fraudulent amendments to leases which would encumber the value of their acquired property. If the rule were different, lending institutions would be discouraged from making loans since they would have no assurances that the borrower and senior leaseholder would not drastically reduce the value of the lease, thereby reducing the value of the property and security. (*First Nat. Bank, supra,* 84 Cal.App.2d at p. 255.) Public policy supports the rule enunciated in *First Nat. Bank* and the trial court correctly relied upon it in holding the amendment was extinguished.

However, R-Ranch argues the trial court erred because Old Stone is estopped from asserting that the foreclosure extinguished the amendment

and further, the trust deed provided for the amendment. The arguments are without merit.

Old Stone was not estopped from asserting that the amendment was extinguished by the foreclosure. There is no evidence Old Stone knew of the amendment before April 16, 1990, when its attorney wrote a letter to R-Ranch objecting to the amendment and to the proposed assignment of the lease to Tham's.[2] Because Old Stone had no knowledge of the amendment, it was not estopped to assert its right to object and claim the deed of trust had priority over the amendment. (See *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].)

R-Ranch also argues the deed of trust provided for the amendment. We disagree. The deed of trust required Old Stone's consent to any lease amendment, modification or assignment. R-Ranch cites article 1.18 of the trust deed in support of its contention that the deed of trust allowed for amendment. However, that portion of the deed merely allowed the borrower to lease the individual units in the shopping center without triggering a due-on-sale provision. It did not allow the borrower to amend the lease without Old Stone's consent.[3]

## C. *The Assignments*

Old Stone argues the trial court erred in finding the assignments of the lease from Alpha Beta to R-Ranch and from R-Ranch to Tham's were not

---

[2] In its petition for rehearing R-Ranch asserts Old Stone knew about the lease amendment before April 16, 1990. The trial court implicitly found against R-Ranch on this point. R-Ranch suggests the parties entered into a stipulation contradicting this statement, but provides no citation to the record to support its assertion.

R-Ranch also relies on the testimony of Jeff Evans, Old Stone's vice-president handling the Valley Center loan. Evans testified he did not know about the amendment or see the memorandum of lease until after this litigation began. While Evans learned in February or March of 1988 that R-Ranch was in possession of the premises, he only asked Valley Center for information on *R-Ranch*, not the terms of its lease.

Finally, R-Ranch claims Old Stone was obligated to investigate the scope of its interest in the premises, and asserts the doctrine of constructive notice applies in this case. Both arguments are unavailing. The legal authorities R-Ranch cites for these propositions relate to a *subsequent* lienholder's obligation to investigate the scope of a tenant's interest in the property or the knowledge imputed to such a person by a previously recorded document. Old Stone recorded its trust deed in December 1986. The lease amendment did not occur until June 1987, and Alpha Beta did not assign the lease to R-Ranch until early 1988. R-Ranch cites no authority for the proposition that a lienholder is placed on either inquiry notice or constructive notice of an interest in the property created *after* perfection of its lien.

[3] Article 1.18 provided, in pertinent part: ". . . the transfer of possession of the Property or any portion thereof . . . or a change in the person or entity operating and managing the Property or Trustor may significantly and materially alter or reduce Beneficiary's security for the Note. Accordingly, . . . Trustor agrees that it shall not transfer the Property or any portion thereof or interest therein without the prior written consent of the Beneficiary, *except for* (i) *non-ground leasing of the same for occupancy purposes only* . . . ." (Italics added.)

extinguished by the foreclosure sale. It bases this contention on the fact that since the assignments occurred after the deed of trust was recorded, it follows that they must also be extinguished. Again, we disagree.

The original lease was prior in time to the deed of trust. While the lease permitted assignments only with the landlord's express consent, Valley Center's conduct amounted to a waiver of the express consent provision. Valley Center executed the amendment, did not object to the assignments, and accepted rent from the new tenants. (See Civ. Code, § 1995.300 ["a remedy provided by law for violation of the rights of the tenant or of the landlord concerning transfer of the tenant's interest in a lease . . . is . . . subject to any applicable defense, whether legal or equitable, including . . . estoppel."].) Because Valley Center was the entity empowered to consent to the assignments, and because it did so by its conduct, the assignments were valid.[4] (See *Buchanan* v. *Banta* (1928) 204 Cal. 73, 76-77 [266 P. 547] [valid assignment because landlord, although initially refusing the assignment, accepted rent from assignees without objection]; *Weisman* v. *Clark* (1965) 232 Cal.App.2d 764, 768-769 [43 Cal.Rptr. 108] [assignment in violation of lease's anti-assignment clause only voidable at lessor's election]; *Martin* v. *Auerbach* (1949) 94 Cal.App.2d 222, 225-226 [210 P.2d 321] [assignment of a lease in violation of an anti-assignment clause voidable at landlord's option; if he or she disregards the breach, the lease is valid and subsisting as to all other parties]; *Taylor* v. *Odell* (1942) 50 Cal.App.2d 115, 120-121 [122 P.2d 919] [restriction against assignment is a personal covenant for lessor's benefit and anti-assignment clause is waived by landlord allowing premises to be occupied with full knowledge of the facts].) Thus, we conclude the trial court properly found the assignments valid.

### DISPOSITION

The judgment is affirmed. R-Ranch's request for sanctions is denied. The parties shall bear their own costs on appeal.

Crosby, Acting P. J., and Wallin, J. concurred.

A petition for a rehearing was denied July 21, 1993, and the petition of appellant R-Ranch Markets #2, Inc., for review by the Supreme Court was denied September 23, 1993.

---

[4]Old Stone had constructive and actual knowledge of the transfer from Alpha Beta to R-Ranch in early 1988 and did not object until the filing of this lawsuit in June of 1990. Accordingly, it is estopped to challenge that assignment for this reason as well. (See *Lentz* v. *McMahon, supra,* 49 Cal.3d 393, 399.) In any event, absent "*a commercially reasonable objection*" Old Stone could not refuse to consent to the assignments. (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 496 [220 Cal.Rptr. 818, 709 P.2d 837].)