# United States Court of Appeals
## For the First Circuit

No. 11-1057

BACK BAY SPAS, INC.,

Plaintiff, Appellant,

v.

441 STUART MARKETING, LLC,

Defendant, Appellee,

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Corus Bank, N.A.,

Necessary Party, Appellee,

441 STUART STREET ASSOCIATES, LLC;
441 STUART STREET -- VEF V, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lipez, Selya and Howard, Circuit Judges.

Sander A. Rikleen, with whom Mark R. Vernazza and Edwards
Angell Palmer & Dodge LLP were on brief, for appellant.

Lawrence M. Kraus, with whom Emily M. Kelley and Foley &

Lardner LLP were on brief, for appellee.

    J. Scott Watson, with whom Sara A. Laroche, David E. Lurie and Lurie & Krupp, LLP were on brief, for necessary party/appellee.

————————————

August 14, 2012

————————————

**LIPEZ, Circuit Judge**.  Appellant Back Bay Spas, Inc. ("Back Bay"), seeks specific performance of a contract -- termed the "Letter Agreement" -- giving it the right to purchase the space it occupies in a building slated for conversion to condominium units.  Three factors complicate the scenario: (1) the other party to the Letter Agreement needed the written consent of its mortgage bank for the sale, but no such writing exists; (2) that would-be seller no longer owns the condominium property, having lost it in a foreclosure sale; and (3) the current owner, appellee 441 Stuart Marketing, LLC ("Marketing"), is a subsidiary of the lender, Corus Bank ("the Bank").

The district court found no basis for enforcing the Letter Agreement against Marketing.  It concluded that a Massachusetts statute imposing obligations on lenders taking over condominium developments after a foreclosure was inapplicable, see Mass. Gen. Laws ch. 183A, § 22, and it rejected Back Bay's claim that it was entitled to specific performance because the Bank had consented to the deal by its conduct and silence.  On appeal, Back Bay does not challenge the adverse ruling on consent, arguing only that the court erred in concluding that § 22 does not require Marketing to carry out the Letter Agreement.  Thus, in effect, Back Bay argues for the first time on appeal that the Letter Agreement is enforceable without the Bank's consent.  This new theory is not

only undeveloped, but, more importantly, it is too late. Hence, we affirm summary judgment for Marketing.

I.

We review the district court's grant of summary judgment de novo, taking the facts and any reasonable inferences drawn from them in favor of the non-moving party. Barry v. Moran, 661 F.3d 696, 702-03 (1st Cir. 2011). Here, the material facts are undisputed.

## A. Factual Background

Appellant Back Bay has operated a women's health club at 441 Stuart Street in Boston since 1995, renting its space under a long-term lease that is renewable through 2025. In May 2004, a developer – 441 Stuart Street Associates, LLC ("Associates") – purchased the building and subsequently obtained a zoning variance allowing the premises to be converted into mixed-use condominium units. Back Bay appealed the variance in April 2005, and, after lengthy negotiations with Associates, agreed to drop its objections to the redevelopment project in exchange for Associates' promise to sell it a unit, identified as "Commercial Unit B," that essentially consists of the space the health club occupies. Their "Letter Agreement," signed in October 2005, called for the parties to enter into a separate purchase and sale agreement within twenty-one days, and it set a closing date for seventy-five days later, i.e., in early January 2006.

-4-

Under its construction mortgage and related loan agreement with Corus Bank, Associates was required to obtain the Bank's written consent for a sale of any condominium unit at 441 Stuart Street. See Mortgage, § 2; Loan Agreement, §§ 10.6, 11.6.[1] The Loan Agreement also specified a minimum sales price for the building's retail units that is higher than the price for Commercial Unit B stated in the Letter Agreement. See Plaintiff's Response to 441 Stuart Marketing, LLC's Statement of Undisputed Material Facts ("Plaintiff's Response"), ¶¶ 30, 31. That deviation from the Loan Agreement's terms also required written approval from the Bank. Id. ¶ 32; see also Loan Agreement § 15.6(a) ("No waiver of any provision of this Agreement or any other Loan Documents shall be effective unless set forth in writing signed by Lender . . . ."). Despite these explicit limitations on Associates'

---

[1] The mortgage document, titled Construction Mortgage, Security Agreement, Assignment of Rents, and Fixture Filing ("Mortgage"), includes a provision, titled "Prohibition on Sale," stating that no sale of any portion of the building is permitted, but that

> Lender may, in its sole discretion, consent to a sale . . . and expressly waive this provision in writing to Borrower . . . . Lender's ability to consent to any sale . . . implies no standard of reasonableness in determining whether or not such consent shall be granted and the same may be based upon what Lender solely deems to be in its best interest . . . . [A]ny sale . . . of . . . the Premises . . . made, created or permitted in violation of this provision shall be null and void . . . .

Mortgage, § 2.

authority to carry out the deal outlined in the Letter Agreement, that Agreement did not mention the need for consent and no document showing the Bank's approval was obtained.

Back Bay, however, was aware of the consent requirement. Its president, Mark Harrington, acknowledged in an affidavit that he had been repeatedly told during the negotiations leading to the Letter Agreement that Associates "could not enter into the Letter Agreement or agree to terms we were negotiating without approval of Corus Bank." In addition, in August 2004, more than a year before the parties completed that agreement, Back Bay had signed a Subordination, Non-Disturbance and Attornment Agreement ("the SNDAA") with Associates and the Bank that referenced the mortgage. The SNDAA stated that Back Bay's lease would be subordinated to the mortgage, but it protected the health club's rights under the lease and provided that a foreclosure on the mortgage would not terminate the lease. See Plaintiff's Response, ¶ 18. Back Bay thus had at least constructive notice of the written consent requirement, as contained in the publicly recorded mortgage, well before it challenged the variance and negotiated the settlement with Associates. The Loan Agreement is specifically referenced on the first page of the Mortgage.

Harrington further stated in his affidavit, however, that he had been assured by Associates that the Letter Agreement had been approved by the Bank. He asserted that Back Bay had "relied

upon these assurances and Corus Bank's silence in agreeing to settle the Zoning Appeal." He continued:

> Back Bay Spas would not have executed the Letter Agreement and dismissed the Zoning Appeal if there was any doubt as to Corus Bank's assent or as to conveyance of Commercial Unit B free and clear of the Corus Bank mortgage.

It is undisputed that the Bank was aware of the negotiations leading to the Letter Agreement and that the Bank official responsible for the project had reviewed an unsigned version of the contract, but there is no evidence in the record that Bank officials ever directly communicated with Back Bay. See Defendant 441 Stuart Marketing LLC's Response to Plaintiff's Statement of Additional Material Facts ("Marketing Response"), ¶¶ 70 (Response), 79 (Response); Affidavit of Paul Carlson, ¶ 12; Carlson Deposition, at 25.

Beginning with Back Bay's challenge to the variance, Associates encountered serious difficulties in moving forward with the condominium project. See Marketing Response, ¶¶ 68, 73 (Response); Plaintiff's Response, ¶ 43. Associates' loan agreement originally required it to obtain the necessary permits and begin construction by March 31, 2005, but the developer's inability to obtain a variance until Back Bay withdrew its appeal delayed issuance of a building permit and, consequently, there was neither a permit nor a construction contract at the time the Letter Agreement was signed in October 2005. See Plaintiff's Response,

-7-

¶¶ 10, 43; Marketing Response, ¶ 68.  In addition, because of the project delays, the Bank had stopped advancing funds on the loan in the summer of 2005.  Plaintiff's Response, ¶ 24.

The building permit eventually issued in March 2006, and Associates recorded the condominium master deed in June 2006.  Both events occurred well after the January closing date specified in the Letter Agreement for Back Bay's purchase of Commercial Unit B.  As time passed, various disputes arose between Back Bay and Associates about terms of the Letter Agreement, including the delay in the closing.  See Plaintiff's Response, ¶ 52; Marketing Response, ¶ 96.

## B. Litigation Background

In September 2006, Back Bay filed this action in a Massachusetts state court seeking specific performance of the Letter Agreement and breach of contract damages against Associates; Associates filed a counterclaim seeking rescission of the Letter Agreement.  Back Bay's complaint also alleged violation of Massachusetts' deceptive business practices act, Mass. Gen. Laws ch. 93A, against Associates and a related entity.[2]  The Bank was named as a necessary party for the specific performance claim.

Meanwhile, Associates' plans for 441 Stuart Street remained unrealized.  Although the maturity date for Associates'

---

[2] Defendant 441 Stuart Street – VEF V, Inc. is a part owner of Associates.

loan was extended three times, the Bank declared the developer in default in early 2009 and foreclosed on the mortgage in April 2009. After the Bank was the winning bidder at a public auction, it created a subsidiary, 441 Stuart Marketing, LLC ("Marketing"), to take title to the property. Back Bay then amended its complaint to add a count of specific performance against Marketing. The Bank subsequently failed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. After the FDIC was substituted for the Bank as a necessary party in the litigation, the agency removed the lawsuit to federal court.

Shortly thereafter, Marketing moved for summary judgment on the ground that the foreclosure sale had extinguished any rights Back Bay held under the Letter Agreement with Associates. In its response, Back Bay argued, inter alia, that Marketing was required to honor the Letter Agreement based on a Massachusetts statute providing that a lender taking over a condominium development must assume "any obligations the developer has with the unit owners and to the tenants." See Mass. Gen. Laws ch. 183A, § 22. Back Bay contended that summary judgment was improper "because genuine issues of material fact exist as to whether Stuart Marketing and Corus Bank are the lender taking over the project" within the meaning of section 22. Plaintiff's Opposition to 441 Stuart Marketing, LLC's Motion for Summary Judgment, at 8.

The district court rejected the applicability of section 22 and granted judgment for Marketing. It held that Back Bay's interest in Commercial Unit B was junior to the Corus mortgage and, under ordinary real estate principles, the commitment to sell the unit did not survive the foreclosure. Section 22 did not modify the generally applicable principles in the circumstances of this case, the court concluded, because Back Bay's allegations did not arise from its tenancy and it was not a unit owner. See Opinion at 6 ("Back Bay does not allege any breach of its rights as a tenant, and the company brings this lawsuit because it is not a unit owner.").

The court also rejected Back Bay's argument, based on the principle of equitable estoppel, that the Letter Agreement was enforceable because the Bank had consented to the sale of Commercial Unit B by its silence. The court pointed to multiple factors undermining the assertion of consent-by-silence: (1) the explicit requirements for written consent in the Loan Agreement and Mortgage, (2) Associates' verbal disclosure of the consent requirement, (3) a purchase price for the unit that was "substantially below the minimum price specified in the Loan Agreement,"[3] (4) the absence of evidence that "the Bank

---

[3] It is undisputed that the price was "approximately 30% below the lower threshold price at which the Bank could not unreasonably withhold consent." Plaintiff's Response to 441 Stuart Marketing, LLC's Statement of Undisputed Material Facts, at ¶ 31.

affirmatively communicated its consent, in writing or otherwise," and (5) Associates' acknowledgment of the lack of consent in correspondence with the Bank in July 2006 – nine months after the Letter Agreement was signed.[4] The court further cited the "significant, and ultimately insurmountable, obstacles" to completion of the condominium project, including the Bank's cutoff of loan funds and the lack of a building permit or construction contract, which made it "unreasonable for plaintiff to infer consent from silence."

The district court's order also addressed a motion to dismiss filed by the FDIC. In granting the motion, the court

---

[4] The July 2006 letter, signed by attorney Jonathan Gold for Associates, stated that the Master Deed for the condominium project had been filed without the Bank's consent, "on an emergency basis," because of ongoing negotiations with Back Bay about the parties' mutual obligations under the Letter Agreement and Back Bay had been pressing for a firm closing date. Gold also stated:

> Obviously, the sale of Commercial Unit B also requires the Lender's consent. You have our assurances that Commercial Unit B will not be sold without first obtaining the Lender's consent to the transaction.

The record contains an affidavit from the Bank official primarily responsible for the project, Paul Carlson, acknowledging awareness of the negotiations leading to the Letter Agreement and stating his belief that Associates "would, in advance of executing the purchase and sale agreement described in the Letter Agreement, make a formal request to the Bank for approval of the transaction described in the Letter Agreement." Carlson Affidavit, ¶¶ 12, 13. Carlson also testified in deposition that the Bank was never asked to approve or reject the Letter Agreement. He did, however, acknowledge that he had seen an unsigned draft of the Agreement, but that the Bank had neither objected to it nor given approval, and he stated that the Bank "did not dissent or approve or object [to]" any of the terms in the final version of the document.

explained that the government agency was no longer a necessary party in light of the judgment in favor of the current property owner, Marketing.  The court subsequently denied Back Bay's motion for reconsideration, as well as its request that the court certify to the Massachusetts Supreme Judicial Court a question concerning the application of section 22.  After the district court entered final judgments in favor of Marketing and the FDIC, see Fed. R. Civ. P. 54(b),[5] Back Bay filed this appeal challenging the judgment for Marketing.[6]

**II.**

On appeal, Back Bay focuses on section 22, the Massachusetts statute imposing successor liability on lenders who foreclose on, and take over, condominium developments.  In full, the provision states:

> § 22. Foreclosure of condominium development; liability of lender and developer
>
> In the event of a foreclosure upon a condominium development, the lender taking over the project shall succeed to any obligations the developer has with the unit

---

[5] In granting those judgments before the entire case was resolved, the district court noted that the remaining claims against Associates for breach of contract and violation of chapter 93A were "different in kind and scope from those against the other parties."

[6] Back Bay has not appealed the FDIC's dismissal from the case, but such a challenge would in any event have been unavailing given our disposition.  We note that the FDIC's departure from the action does not divest the federal court of jurisdiction.  See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).

-12-

> owners and to the tenants, except that the developers shall remain liable for any misrepresentation already made and for warranties on work done prior to the transfer.

Mass. Gen. Laws ch. 183A, § 22.  Back Bay argues that Marketing must provide specific performance of the Letter Agreement because the circumstances here plainly fit within the language of the statute:  Marketing (1) is effectively a lender, as it stands in the shoes of its parent, Corus Bank; (2) it has taken over the condominium project; and (3) the Letter Agreement is an obligation to a tenant, i.e., Back Bay.  The district court took issue with Back Bay's showing on the third of these elements, observing that the statute did not apply because Back Bay had failed to "allege any breach of its rights as a tenant."

Even if the district court were wrong about the statute's scope, Back Bay's claim for specific performance would founder.  It is undisputed that the Bank's written consent was a prerequisite for the conveyance of Commercial Unit B to Back Bay.  Back Bay's response to Marketing's motion for summary judgment acknowledged that requirement, and Back Bay forcefully argued that the Bank manifested consent through its actions and silence.[7]  Back Bay lost

---

[7] In its Opposition to Marketing's Motion for Summary Judgment, Back Bay stated:

> Corus Bank had the right to approve or reject the proposed sale of Commercial Unit B contained in the Letter Agreement . . . , and as Corus Bank acknowledged, the price of Commercial Unit B was material to the Bank since it constituted part of the Bank's collateral

that argument, however, and it does not appeal the adverse ruling. Indeed, its opening brief entirely ignores the issue of consent and focuses solely on whether the Letter Agreement is an obligation to a tenant covered by § 22.  For the first time in its reply brief, Back Bay asserts that Marketing can be ordered to abide by the Letter Agreement in the absence of the Bank's consent because the Agreement does not itself record the consent requirement.

But having chosen its theory of the case below, and failed, Back Bay cannot start over.  See Sotirion v. United States, 617 F.3d 27, 39 n.10 (1st Cir. 2010) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals." (quoting United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) (internal

---

. . . . Nevertheless, Corus Bank never objected while the parties changed their positions and Back Bay Spas began to spend considerable sums in anticipation of its purchase of Commercial Unit B . . . .  These actions evidence Corus Bank's consent to settlement of the Zoning Appeal, the Letter Agreement and the parties' performance thereunder, and the condominium master deed. . . .  By its conduct, Corus Bank provided its consent to all terms of the Letter Agreement, including the sale price and any requirement associated with it.

Opposition, at 9-10.  In a separate section of the Opposition, Back Bay argued that the Bank "[r]epresented its [c]onsent to the Letter Agreement by its [c]onduct and [s]ilence."  Id. at 12.  Back Bay further stated that it "would not have executed the Letter Agreement and dismissed the Zoning Appeal if it had any doubt as to Corus Bank's assent" and argued that "Corus Bank's own conduct and its silence amount to misrepresentations concerning its intent to forgo some of its contractual and property rights in order to facilitate the development of the Premises."  Id. at 13.

-14-

quotation marks omitted)); Teamsters, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). Moreover, Back Bay does not explain why the consent requirement should suddenly be deemed unenforceable despite both parties' previously undisputed understanding that it was a necessary element of the transaction. Contrary to Back Bay's assertion, the mere fact that the Letter Agreement does not contain an explicit consent provision is an insufficient basis for cancelling the requirement. Massachusetts law allows such prerequisites to be implied from the circumstances. See Rizika v. Donovan, 695 N.E.2d 1097, 1101 (Mass. App. Ct. 1998) ("In order for performance to depend on the occurrence of a condition, the condition must be expressed, unless a court implies the existence of the condition from the circumstances of the contract."). Back Bay's repeated acknowledgment that the Bank's consent was a condition for the conveyance of Commercial Unit B is reason enough to imply such a requirement in the Letter Agreement. See Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 289 n.5 (Mass. 1991) ("Extrinsic evidence of a condition precedent must indicate a clear intent which is expressly stated." (citing Tilo Roofing Co. v. Pellerin, 122 N.E.2d 460, 462 (Mass. 1954), and noting in a

-15-

parenthetical describing <u>Tilo Roofing</u> that an "express condition [was] created orally at the time of agreement").

Back Bay's concession also eliminates any parol evidence or statute of fraud concerns.  Neither party is seeking to vary or modify the terms of the deal outlined in the Letter Agreement, <u>see</u>, e.g., <u>Kobayashi</u> v. <u>Orion Ventures, Inc.</u>, 678 N.E.2d 180, 184 (Mass. App. Ct. 1997) ("The parol evidence rule only bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing."), or to enforce a promise that is not memorialized in the Letter Agreement, <u>see</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Fall River Hous. Auth.</u>, 538 N.E.2d 24, 29 (Mass. App. Ct. 1989) ("In order to satisfy the Statute of Frauds, the writing must incorporate the promise that the plaintiff seeks to enforce.").  In short, in the circumstances here, the consent requirement did not need to be in writing to be enforceable.  <u>See</u> <u>Tilo Roofing</u>, 122 N.E.2d at 462 ("It is settled that a condition precedent to the taking effect of a written instrument may be shown by parol [evidence].").[8]

_____

[8] We reject Back Bay's attempt in its reply brief to equate the situation here to those in which courts, in the absence of contingency provisions, have enforced contracts despite later events that frustrated one party's expectations.  Back Bay argues that, because Associates unconditionally promised to sell Commercial Unit B to Back Bay, Associates' failure to obtain the Bank's consent does not relieve Associates from its promise.  This contention is a variation on its new argument that the Bank's consent was not an element of the Letter Agreement because it was not included in the document.  As we have explained, Back Bay must live with the view of consent presented to the district court,

Back Bay's failure on appeal with regard to Marketing does not mean that it is inevitably without a remedy if it proves it was wronged. Back Bay's claims remain pending against Associates, but we take no view about their viability. We thus affirm the district court's grant of summary judgment for Marketing and the FDIC. Appellant's motion to certify a question to the Massachusetts Supreme Judicial Court is denied.[9]

<u>So ordered</u>.

---

i.e., that the Bank's consent was a known and necessary element of the deal outlined in the Letter Agreement.

[9] Given our conclusion that § 22 does not govern the outcome of this case, there is no basis for certifying a question concerning the statute's scope to the Massachusetts Supreme Judicial Court. <u>See</u> Mass. S.J.C. Rule 1:03(1) (providing authority to answer certified questions where, inter alia, "questions of law of this state . . . may be determinative of the cause then pending in the certifying court").