MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2019 ME 3
Docket:       Yor-18-103
Argued:       December 12, 2018
Decided:      January 8, 2019

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

LITTLEBROOK AIRPARK CONDOMINIUM ASSOCIATION

v.

SWEET PEAS, LLC, et al.

MEAD, J.

[¶1]  Sweet Peas, LLC, and party-in-interest Jean Hardy appeal from a judgment of the Superior Court (York County, *Fritzsche, J.*) denying their motions for summary judgment and granting the cross-motion for summary judgment of Littlebrook Airpark Condominium Association (the Association) on the Association's action for a declaratory judgment on the issue of the effectiveness of a lease amendment.  The court found that, although a lease amendment resulted in a default of the mortgage encumbering property owned by Sweet Peas, the amendment was not void.  We vacate the judgment.

## I. FACTS AND PROCEDURE

### A. Facts

[¶2] The following facts are drawn from the summary judgment record and are undisputed. On March 18, 1999, John Hardy, who then was the owner of the property at issue, entered into a twenty-year lease agreement with Littlebrook Airport Development Co., Inc. (LADC), of which John's wife, Jean Hardy, was the president. Through this agreement, LADC was granted the right to develop and maintain ten condominium units on the leased property, which were then to be sold to individual unit owners. The same day, LADC executed a declaration of condominium subjecting the leased property to the Maine Condominium Act, 33 M.R.S. §§ 1601-101 to 1604-118 (2017), and thereby created the Association. Both the lease and the declaration were recorded. Later in 1999, condominium units seven, nine, and ten were sold, and the lease was amended in a manner not relevant to this appeal.

[¶3] When John Hardy died on November 15, 2000, Jean Hardy became the owner of the property that was leased to LADC. By a recorded deed dated June 30, 2005, Jean Hardy then sold the leased property to Littlebrook Ventures, LLC (LV), an organization of which James Barrett was the sole member. LV executed and delivered to Hardy a mortgage on the property and

an assignment of leases and rentals, both of which were recorded. In the mortgage, LV agreed not to modify any leases or tenancies without Hardy's prior written consent. Likewise, in the lease assignment, LV agreed not to alter, modify, or change the terms of the lease without Hardy's prior written consent.

[¶4] The same day, LADC assigned its interest in the lease and its rights as declarant of the condominiums pursuant to the Maine Condominium Act to Windmill, USA, LLC (Windmill). James Barrett was also the sole member of Windmill. Additionally, LADC sold its interest in condominium units one through six to Windmill, retaining its interest in unit eight. Windmill sold units one through six to individual unit owners in October 2005, and LADC sold unit eight to an individual unit owner in June 2006.

[¶5] On October 11, 2005, Windmill executed and recorded a document styled as an amendment to the declaration of condominium which purported to extend the term of the lease for forty years beyond the original twenty-year term and to give unit owners the right to use the runway on the property without a fee. Two days later, LV and Windmill signed an addendum to the lease purporting to amend the lease in accordance with the declaration amendment by extending the term of the lease and allowing use of the runway

without a fee. The lease amendment was not recorded, and there is nothing in the record to suggest that Hardy gave prior written consent to the amendment.[1]

[¶6] By deed in lieu of foreclosure dated December 15, 2005, and recorded on March 31, 2006, LV conveyed the property back to Hardy. Hardy then enforced her statutory power of sale and purchased the property at the foreclosure sale on July 27, 2006. On October 25, 2006, she conveyed the property to Sweet Peas in a quitclaim deed that stated that the conveyance was explicitly subject to the 2005 declaration amendment and the 1999 lease amendment but made no mention of the 2005 lease amendment. Sweet Peas later executed a mortgage in Hardy's favor.

B.     Procedure

[¶7] On June 16, 2011, the Association, on behalf of the individual condominium unit owners and as successor to the lessee's rights under the lease,[2] filed a nine-count complaint in the Superior Court against Sweet Peas. Relevant to this appeal is count eight, a claim for declaratory judgment on the issue of the effectiveness of the 2005 lease amendment.

---

[1] Hardy questioned the effectiveness of the declaration amendment in email correspondence with her then-attorney in May 2006.

[2] Windmill was at some point administratively dissolved.

[¶8]  Sweet Peas, and Hardy as party-in-interest, filed motions for partial summary judgment, arguing that the lease amendment was void because (1) the foreclosure extinguished it, (2) there was no consideration for it, (3) it was against public policy, and (4) it was the result of Barrett's fraudulent actions.  The Association filed a cross-motion for summary judgment, arguing that the validity of the amendment was not challenged within a year after the amendment was recorded and that Sweet Peas and Hardy's challenge was therefore untimely pursuant to 33 M.R.S. § 1602-117(b) (2017).

[¶9]  In addressing the Association's argument, the trial court determined that section 1602-117(b) barred Hardy from challenging the amendment to the *declaration* but that it did not bar her from challenging the validity of the amendment to the *lease.*  However, the court concluded that, although Barrett could not change the lease in 2005 without Hardy's consent, that did not mean "that a change in the lease is void as to the plaintiff . . . ."  Accordingly, the court held that the declaration and the lease were validly amended and granted the Association's cross-motion for summary judgment on count eight.[3]

---

[3] On May 7, 2012, Sweet Peas and Hardy moved to alter or amend the judgment pursuant to M.R. Civ. P. 59(e).  The court granted the motion to the extent that it sought correction of typographical errors in the original order but otherwise denied the motion.

6

[¶10]  Sweet Peas and Hardy then filed a motion to report the case to us pursuant to M.R. App. P. 24(c), which the court granted.  We exercised our discretion to reject the report and remanded the case for further proceedings. *Littlebrook Airpark Condo. Ass'n v. Sweet Peas, LLC*, 2013 ME 89, ¶ 15, 81 A.3d 348.

[¶11]  On March 6, 2018, the parties stipulated to dismissal without prejudice of counts one through seven and nine, reserving their rights of appeal with respect to count eight—the issue of the effectiveness of the lease amendment.  Sweet Peas and Hardy now appeal the court's order on the parties' cross-motions for summary judgment, arguing that the lease amendment is not effective because, inter alia, any rights created by the amendment were subordinate to the existing mortgage on the property and were therefore extinguished by Hardy's foreclosure.[4]

## II.  DISCUSSION

[¶12]  "When we review a grant of summary judgment, we view the evidence in the light most favorable to the party against whom the judgment

---

[4] The Association filed a cross-appeal, arguing that any challenge to the lease amendment is now time-barred by the statute of limitations set out in 33 M.R.S. § 1602-117(b) (2017).  Because that provision governs amendments to a declaration of condominium and not to a lease, it is not applicable in this case.  The court correctly concluded that the statute did not bar Sweet Peas and Hardy from challenging the amendment to the lease.

has been granted[] and review the trial court's decision for errors of law." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504 (quotation marks omitted). Additionally, "[w]e independently determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law." *Id.* (quotation marks omitted).

[¶13] It is not disputed that a valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed. *See* 14 M.R.S. § 6203-A(4) (2017) (noting that upon foreclosure "the premises are considered to have been sold free and clear of the interest of the mortgagor and of all other parties in interest . . . except [those] having a superior priority to the foreclosing mortgagee"); Restatement (Third) of Property: Mortgages § 7.1 (Am. Law Inst. 1997) ("A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed . . . [but f]oreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed.").

[¶14] Sweet Peas and Hardy assert that the lease amendment was a junior encumbrance because it was entered into after the mortgage and was therefore voided upon foreclosure of the mortgage. The Association maintains

that the original lease is the operative document and that because that lease was on record before the mortgage, the lease, as amended, is senior to the mortgage. We hold that, under the specific facts of this case, the lease amendment was a new interest created after the mortgage, rendering the amendment junior to the mortgage.

[¶15] The purpose of foreclosure is generally "to give the foreclosure sale purchaser essentially the same title to the land as that possessed by the mortgagor when the foreclosed mortgage was executed." Restatement (Third) of Property: Mortgages § 7.1, reporter's note (quotation marks omitted). *See also Scharaga v. Schwartzberg*, 540 N.Y.S.2d 451, 452 (N.Y. App. Div. 1989) ("[T]he purpose of a foreclosure sale is to end the right to redeem of all persons having interests in the property subject to the mortgage and to vest in the purchaser, upon the sale, the title to the property as it stood at the time of the execution of the mortgage." (quotation marks omitted)). Thus, where the mortgagor leases the mortgaged premises to a third party, "the purchaser at the foreclosure sale takes subject to the lease as it existed when the mortgage was first entered." *12 Thompson on Real Property* § 97.06(e)(2) (David A. Thomas ed., Matthew Bender & Co., Inc. 2018). *See also Fletcher v. Chamberlin*, 61 N.H. 438, 446 (N.H. 1881) ("The mortgagee's title, when perfected by

foreclosure, relates back to the date of the mortgage deed, so as to avoid intervening incumbrances . . . ."); Patrick J. Rohan, *Current Leasing Law and Techniques—Forms* § 7C.02 (Matthew Bender & Co., Inc. 2018) ("Title transferred at foreclosure relates back to when the mortgage . . . foreclosed upon was executed."). It therefore follows that, where the lessor and the lessee have amended the lease, "[i]f the amendment came after the mortgage, the amendments are subordinate to the mortgage." *12 Thompson on Real Property* § 97.06(e)(2).

[¶16] Moreover, policy considerations compel this result where, as here, the lessor and lessee amend the lease in a way that could devalue or otherwise encumber the property and defeat the mortgagee's reasonable expectations. The underlying rationale has been discussed by the Court of Appeal of California in *R-Ranch Markets #2, Inc. v. Old Stone Bank* as a need "to protect lending institutions from fraudulent amendments to leases which would encumber the value of their acquired property." 21 Cal. Rptr. 2d 21, 24 (Cal. Ct. App. 1993). In that case, the court reasoned that "[i]f the rule were different, lending institutions would be discouraged from making loans since they would have no assurances that the borrower and senior leaseholder would not drastically reduce the value of the lease, thereby reducing the value of the

property and security." *Id.* The court therefore affirmed the rule that the lessor and lessee cannot create a greater burden on the property beyond that reserved to it under the original lease without making the additional burden subject to the superior rights of the trustor under the trust deed. *Id.* at 23-24 (citing *First Nat'l Bank v. Coast Consol. Oil Co.*, 190 P.2d 214, 217 (Cal. Ct. App. 1948)).

[¶17] The Association argues that this rationale is mitigated by the fact that mortgagees commonly get adequate assurances that the value of the lease will not decrease by entering into subordination agreements with lessees. By way of a subordination agreement, "one who holds an otherwise senior interest agrees to subordinate that interest to a normally lesser interest . . . ." *Subordination Agreement*, Black's Law Dictionary (10th ed. 2014). The Association contends that in order to prevent the possibility of a later lease amendment defeating the mortgagee's reasonable expectations about the existing lease, the mortgagee should obtain an agreement from the lessee subordinating its interest.

[¶18] A lessee might agree to this if a mortgagee also signs a non-disturbance agreement, whereby the mortgagee agrees not to terminate a subordinate lease in the event of foreclosure. Rohan, *Current Leasing Law and Techniques—Forms* § 7C.01. Lessors, lessees, and mortgagees can accordingly

modify their common law rights in one document called a subordination, non-disturbance, and attornment agreement (hereinafter SNDAA). *See id.* at Ch. 7C Scope. Although SNDAAs are a mechanism for parties to gain contractual certainty, there is no duty or requirement for a party to sign one. *See Wheeler v. White*, 1998 ME 137, ¶¶ 2-5, 714 A.2d 125 (upholding a jury verdict in favor of an attorney who did not counsel his client as to the advisability of obtaining a SNDAA where the attorney believed that (1) the mortgagee generally did not enter into subordination agreements and (2) his client's circumstances were not likely to facilitate the negotiation of a subordination agreement because the client did not present a large financial benefit to the mortgagee); Rohan, *Current Leasing Law and Techniques—Forms* § 7C.05. Indeed, "in periods of strong tenant demand and rising rents . . . the [mortgagee] may be less willing to enter into a non-disturbance agreement and may rely on subordination by operation of law . . . ." Rohan, *Current Leasing Law and Techniques—Forms* § 7C.05.

[¶19] The Association further argues that even if the mortgage terms prohibited the lessor from amending the lease, the lessee was not a party to the mortgage, and a SNDAA was required to prevent the lessee from exercising its right to amend, even if the lessor did not have that right. To the contrary, the lessee here was well aware of the restriction in the mortgage documents that

prevented the lessor from amending the lease. *See Back Bay Spas, Inc. v. 441 Stuart Mktg., LLC*, 688 F.3d 61, 62-63, 66-67 (1st Cir. 2012) (reasoning that a requirement in the mortgage documents that the lender consent to future transactions was enforceable as to the lessee who was not a party to the mortgage where the lessee had constructive notice of the consent requirement).

[¶20] Here, Barrett was the sole member of both LV, the lessor, and Windmill, the lessee. Barrett was thus plainly on notice of the prerequisite that Hardy consent in writing before the lease could be amended—the terms were contained in the publicly recorded mortgage instrument that he himself signed.[5] *See Back Bay Spas*, 688 F.3d at 63. The Association therefore cannot now argue that the lessee is not subject to the terms of the mortgage because the lessee was not a party to the mortgage. *See Anderson v. Robbins*,

---

[5] We do not find persuasive the Association's arguments that Hardy consented to the amendment by making conveyances that did not suggest that the lease amendment was invalid or by continuing to collect rent subsequent to acquiring title to the fee interest underlying the leasehold premises. Hardy conveyed her interest without any representations as to the nature of that interest, and her deeds made no reference to the 2005 lease amendment even though they referenced the 1999 amendment. Furthermore, her acceptance of rental payments did not constitute a ratification of the amendment because the payments were due under the original lease.

82 Me. 422, 426, 19 A. 910 (1890) (noting that a subsequent lease is subject to the mortgage).[6]

[¶21] Lastly, the Association argues that if the lease amendment was in fact a junior interest, it was not extinguished because the individual unit owners were not given notice of the foreclosure. Contrary to the Association's contention, the unit owners were not parties that would have been entitled to written notice in a judicial foreclosure.[7] Notice was published and properly given to Barrett, the agent and sole member of the organization holding a junior encumbrance on the mortgaged property. That interest—the amendment purporting to extend the lease for an additional forty years—was terminated upon foreclosure. Because we hold that the lease amendment is invalid on this basis, we need not address the parties' remaining arguments.

---

[6] Notwithstanding the lessee's notice of the prohibition on amending the lease, the parties' rights are defined by the original lease, which limited the parties' rights to a twenty-year term. The lease provided that if, after the expiration of the original lease term, the lessee had fully performed all of its terms and conditions, then the lessee had the option to enter into negotiations to renew the lease with the lessor for a period of an additional ten years, at a price mutually agreed upon by both lessor and lessee. The original lease did not grant the lessee the authority to extend the lease by an additional forty years before the expiration of the original lease term.

[7] To the extent the Association claims that the unit owners were due notice pursuant to 14 M.R.S. § 6203-A(1-A) (2017), the foreclosure action in this case occurred in 2006, and that provision was not enacted until 2015. *See* P.L. 2009, ch. 476, § B-3 (emergency, effective Feb. 24, 2010); P.L. 2015, ch. 147, § 1. We do not address whether the unit owners would have been entitled to notice had the statute been effective at the time of foreclosure.

The entry is:

> Judgment vacated. Remanded to the Superior Court for entry of a declaratory judgment that the 2005 forty-year extension of the lease was extinguished by the foreclosure and sale of the leased premises.

----

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Sweet Peas, LLC, and Jean M. Hardy

James A. Hopkinson, Esq. (orally), and Gerald B. Schofield, Jr., Esq., Hopkinson & Abbondanza, P.A., Portland, for cross-appellants Littlebrook Airpark Condominium Association